[No. B032564. Second Dist., Div. Six. Nov. 22, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
PATRICK L. ROSS, Defendant and Respondent.

**COUNSEL**

Michael D. Bradbury, District Attorney, and Michael D. Schwartz, Deputy District Attorney, for Plaintiff and Appellant.

Eskin & Jackson and George C. Eskin for Defendant and Respondent.

## OPINION

**STONE (S. J.), P. J.**—The issue here raised is whether the present ability to commit the crime is a necessary element of attempted false imprisonment. We hold it is not. Pursuant to Penal Code section 1238, subdivision (a)(3), the People appeal the trial court's grant of a new trial on three counts of attempted false imprisonment (Pen. Code, §§ 664, 236).[1] Defendant was charged with three counts (1, 2 & 3) of attempted false imprisonment by violence, menace, fraud or deceit (§§ 664, 236), two counts (4 & 6) of false imprisonment (§ 236), one count (5) of assault with a firearm (§ 245, subd. (a)(2)), one count (7) of attempted kidnapping (§§ 664, 207, subd. (a)), and one count (8) of assault with a deadly weapon (§ 245, subd. (a)(1)). A special allegation of use of a firearm (§ 12022.5) was also alleged in count 4. Both parties waived jury.

The Honorable James McNally found defendant guilty of counts 1, 2, 3, 4, 6 and 8 and found true the firearm and deadly weapon allegations in counts 4 and 6 but acquitted him of counts 5 and 7.

Due to a conflict of interest which developed after trial, Judge McNally recused himself and Judge McGrath heard defendant's motion for a new trial on counts 1, 2 and 3.[2] Judge McGrath granted the motion on the basis that the evidence presented did not demonstrate the defendant had the present ability to commit attempted false imprisonment. The court placed defendant on probation (§ 1203.095; Cal. Rules of Court, rule 416) conditioned upon his serving 360 days in county jail, execution stayed to February 4, 1988.

## FACTS

### Count 1

At 9 p.m. April 23, 1985, Linda Oliver drove to Lucky's Market in Simi Valley accompanied by her 10-year-old daughter. On returning to her car, she found a note affixed to the driver's door which said, "Honey, unless you do exactly as I say that fat little girl will be dead. No bullshit. I am (2) cars away from you and my gun is pointed right at the back of her head. Believe me it won't bother me in the least. Now follow instructions exactly. [¶] (1) Put your keys on top of car. (2) Send her to look at the fish and tell her you will pick her up down there in a few min. (3) Open your door and get in - open back door. (4) Pull your top over your eyes and lay face down in the

---

[1] All statutory references hereinafter are to the Penal Code unless otherwise specified.

[2] Judge McNally's wife was director of a drug rehabilitation in which defendant was enrolled and which he argued was a factor in mitigation to be considered at sentencing.

seat. (5) Raise your hand when you have done what you have been told to do. (6) Remember - exactly or she is dead."

When she read the threat concerning her daughter, she immediately drove from the parking lot to a friend's house from where she called the police.

The defendant testified that the writing on the note was his but that he did not remember either writing it or placing it on the car. He did not recollect whether he had a gun with him at that time. He had been a heavy cocaine user and was now in treatment.

## Count 2

At 8 p.m. April 23, 1985, Maria Mathews drove with her 9-year-old daughter to the Sav-On drug store next to Mervyn's in Simi Valley. When they returned to the car, Mrs. Mathews found a note on the car door. She glanced at the note and, realizing the threat, drove quickly to a neighbor's house reading the note as she drove: "Honey, I pick you. I hope for your kids [sic] sake you do exactly as your [sic] told. If not I swear to god I am only a (2) of cars away with my gun pointed at her head. I will blow her head off. [¶] Now: #(1) Put your keys on top of your car. (2) Send your kid to Mervyns to look around. #(3) get in car, open back door. [4] take off your top and cover your eyes. [5] Raise your right hand so I can see it. Remember she is dead."

Defendant testified the note was in his handwriting, but here too, he had no recollection of leaving it in the car.

## Count 3

Robert Sullivan went shopping at Alpha Beta in Simi Valley at 11 p.m. May 16, 1985, with his wife, son and daughter. His daughter was wearing glasses and his wife was wearing a white sweater. He and his wife separated to shop, his wife taking the daughter with her. When they returned to the car, Mr. Sullivan found a note, similar to the others, wedged in the driver's door which said, ". . . I have my gun pointed between your sweet little girls eyes. I will break her glasses with my bullet. . . ." The note instructed that keys were to be placed on top of the car, ". . . pull your top over your eyes. . . . take your bra off and hold it up with your right hand. Remember keep your white sweater over your eyes."

Mr. Sullivan surveyed the area, saw no one suspicious, gathered his family and drove to a friend's house where he left his wife, son, and daughter. He returned to the store and had the manager call the police.

*Counts 4 through 8*

The remaining counts were variations of the same matter excepting that the defendant actually approached two victims, Carol Unsworth and Celeste Nuss, and personally presented a note. He threatened Ms. Unsworth's son with a gun and threatened Mrs. Nuss with a knife before she escaped. Again, defendant recognized the handwriting on the notes as his and remembered approaching Mrs. Unsworth with a gun in his belt. He denied having a knife when he approached Mrs. Nuss ostensibly to tell her that her car had been struck. A search of defendant's house uncovered a yellow pad similar to the paper used for the notes, a gun and two knives.

## DISCUSSION

Section 1181 provides in pertinent part that: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: . . . 7. When the verdict or finding is contrary to law or evidence . . . ." ■ A motion for a new trial is made to the sound discretion of the trial court whose ruling will not be disturbed except on a showing of clear abuse. (*People v. McDaniel* (1976) 16 Cal.3d 156, 177 [127 Cal.Rptr. 467, 545 P.2d 843].) Regardless of the particular reason the trial court gave in ordering a new trial, a reviewing court will uphold the ruling if there is good and sufficient reason present which is within the terms of the motion. (*People v. Montgomery* (1976) 61 Cal.App.3d 718, 728 [132 Cal.Rptr. 558].)

■ A trial court rules on a motion for a new trial guided by a presumption in favor of the correctness of the verdict and proceedings supporting it. (*People v. Martin* (1970) 2 Cal.3d 822, 832 [87 Cal.Rptr. 709, 471 P.2d 29].) Although justice is better served by having the trial court that heard the evidence hear the motion for a new trial, another trial court may properly do so where necessity demands. (*People v. Tokich* (1954) 128 Cal.App.2d 515, 517 [275 P.2d 816].)

■ The defendant contended in his motion for a new trial that the finding of guilt on the first three counts was contrary to the law and not supported by the evidence because no evidence existed that he placed the notes on any of the vehicles or that he was in the vicinity when they were retrieved. Moreover, two of the intended victims did not read the notes thoroughly until they left the parking lots. The trial court fastened upon "present ability" rather than "presence" as argued by the defense. Both were incorrect.

■ False imprisonment is the unlawful violation of the personal liberty of another. (§ 236.) The crime of false imprisonment requires some intended confinement or restraint of the person; any exercise of force or express or

implied threat of force by which in fact the person is restrained from his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is such imprisonment. (*People* v. *Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186].) The imprisonment may be committed by acts or words said or done with the intent of causing the confinement. (*Ibid.*)

■ An attempt to commit a crime consists of a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. (*People* v. *Siu* (1954) 126 Cal.App.2d 41, 43 [271 P.2d 575]; CALJIC No. 6.00; § 664.) Commission of an element of the underlying crime other than formation of intent to do it is not necessary. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 453 [194 Cal.Rptr. 390, 668 P.2d 697].) Although mere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt, acts which indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design will be sufficient. (See *People* v. *Siu, supra,* 126 Cal.App.2d 41, 43 and CALJIC No. 6.00 approved in *People* v. *Dillon, supra.*)

" 'When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime.' " (*People* v. *Dillon, supra,* 34 Cal.3d 453.) The requisite overt act need not be the last proximate or ultimate step towards commission of the substantive crime. (*Ibid.*) ■ Moreover, a person cannot avoid responsibility for acts committed which constitute an attempt to commit a crime either by voluntarily abandoning his purpose or because he was prevented or interfered with in completing the crime. (*Id.,* at p. 454.)

■ Counsel has cited no case to us, nor have we discovered any, which indicates that present ability or personal presence is a prerequisite to the crime of attempted false imprisonment. The trial court apparently confused the law of assault with that of attempt. An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. (§ 240.) At common law, an assault was defined as an attempted battery and, since one cannot attempt to commit an attempt, attempted assault is a deductive impossibility. (*In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33].) The Legislature has extended this reasoning by including, as an element of assault, present ability to commit a violent injury on the person of another. (*Ibid.*)

An attempt to commit a crime, however, requires only a specific intent to commit it and a direct but ineffectual act done towards its commission, i.e.,

an overt ineffectual act which is beyond mere preparation yet short of actual commission of the crime. (*People* v. *Siu, supra,* 126 Cal.App.2d 41, 43; *People* v. *Valdez* (1985) 175 Cal.App.3d 103, 108 [220 Cal.Rptr. 538].) ▓ A defendant can be convicted of the attempt to commit most crimes even though a factual impossibility prevented the commission of the crime itself. (*People* v. *Valdez, supra,* at pp. 108-109.) ▓ Because of the "present ability" limitation in the statutory definition of assault, no assault is committed unless such present ability exists. (*Ibid.*)

By contrast, in cases of ordinary attempt, the law imposes punishment where guilty intent is coupled with actions that would result in a crime but for the intervention of some fact or circumstance unknown to the defendant. (*People* v. *Meyers* (1963) 213 Cal.App.2d 518, 522-523 [28 Cal.Rptr. 753].) ▓ Defendant argues that factual impossibility is not in issue and that the crime of attempted false imprisonment, similar to the crime of assault, requires actual false imprisonment. He argues that at best, there was an ineffectual act towards the commission of the target offense, this because there was no evidence that defendant placed the notes on the cars or remained in a position to observe the effect of his notes. We disagree.

California courts have not concerned themselves with the subleties of distinction between physical and legal impossibility. (*People* v. *Meyers, supra,* 213 Cal.App.2d 518, 523.) Instead, they have focused their attention on the question of specific intent to commit the substantive offense. (*Ibid.*) ▓ If the defendant commits acts which are more than mere preparation for committing the acts, which he reasonably sees as necessary to commit the offense, but because of circumstances unknown to him, essential elements of the substantive crime are lacking, he is culpable for the attempt; it is only when the results the actor intends, if they happened as he envisages, would still not be a crime, can he not be guilty of an attempt. (*Ibid.*)

▓ Once the defendant placed notes on the cars, the only act which remained to complete the substantive crime was victims' submission to the threats of harm by acquiescing to the demands of remaining in the cars as instructed. Had the defendant left the scene immediately after placing notes on the cars and had the victims followed his instructions, huddled in the cars in fear that he would make good his threats, they would have been no less falsely imprisoned because he did not remain to observe the effect of his notes. His presence was unnecessary to the fact of false imprisonment.

Since the trial court acknowledged that present ability is not necessary to the completed crime of false imprisonment, we fail to see the distinction when the crime is attempted false imprisonment. To judicially add the element of presence or present ability to the crime of attempt or false

imprisonment would be to invade the province of the Legislature by redefining the elements of the underlying crime. (See *In re James M., supra,* 9 Cal.3d 517, 522.)

Accordingly, we find the trial court erred in ruling, as a matter of law, that present ability was necessary to convict defendant of the first three counts.

■ The defendant argues that the trial court's ruling is sustainable because of insufficient evidence that he actually placed the notes on the cars or intended to do more than scare the victims. We disagree. Defendant acknowledged that the notes were written by his hand but did not deny placing them on the cars; he simply could not remember. The notes were almost identical in wording and structure to those given Mrs. Unsworth and Mrs. Nuss who identified him and were written on similar yellow paper. The contents of the notes indicate that the writer observed the intended victims at the scene. Substantial circumstantial evidence supports Judge McNally's finding that the defendant wrote the notes and placed them on the cars with the intent that the intended victims follow his instructions. ■ That he may have changed his mind and fled does not absolve him of the attempted crime. (*People* v. *Dillon, supra,* 34 Cal.3d 441, 454.) Substantial evidence supports the verdict of guilty on the first three counts.

The order granting a new trial on counts 1, 2, and 3 is reversed and the matter is remanded to the trial court for reinstatement of the verdict of guilty on these counts, hearing on all appropriate motions, and for sentencing.

Gilbert, J., and Abbe, J., concurred.

PAGES 344-437:

(*Foley* v. *Interactive Data Corp.*[1]; *Laurel Heights Improvement Assn.* v. *Regents of University of California*[2]; *Phillips* v. *Southern Cal. Physicians Ins. Exchange*[3]; *Lewis* v. *Hughes Helicopter, Inc.*[4]; *Cranston* v. *Insurance Co. of North America*[5]; *Williams* v. *Superior Court*[6] and *Davis* v. *City of Berkeley*[7])

---

[1] Review granted. See 47 Cal.3d 654 for Supreme Court opinion.

[2] Review granted. See 47 Cal.3d 376 for Supreme Court Opinion.

[3] Review granted. On December 15, 1988, cause transferred to Court of Appeal, Second Appellate District, Division Seven, with directions. Subsequent opinion was not certified for publication.

[4] Review granted. On November 10, 1988, cause transferred to Court of Appeal, Third Appellate District, with directions, Subsequent opinion was not certified for publication.

[5] Review granted. On December 15, 1988, cause transferred to Court of Appeal, Fourth Appellate District, Division Three, with directions. Subsequent opinion was not certified for publication.

[6] Review granted. See 47 Cal.3d 736 for Supreme Court opinion.

[7] Review granted. See 47 Cal.3d 512 for Supreme Court opinion.