[No. B062302. Second Dist., Div. Six. Sept. 22, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN IMLER, Defendant and Appellant.

**COUNSEL**

Arthur H. Weed, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Robert F. Katz and David A. Warshaw, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—Here we hold that one can commit the crime of attempted child molestation by speaking to the victim over the telephone.

Defendant Steven Imler pled guilty to numerous counts of making threats over the telephone to commit crimes that would result in death or great bodily injury to another. (Pen. Code, § 422.) His appeal concerns only one count concerning his conviction of attempting to commit a lewd act upon a child. (Pen. Code, §§ 664/288, subd. (a).) He contends the evidence is insufficient to establish the crime of attempt.

We disagree and affirm the conviction.

## FACTS

Imler telephoned numerous Ventura County residences which were listed in the telephone book under the names of both spouses. Upon reaching the wife or child, he stated that he was holding the husband or father at gunpoint. For those persons he called who did not hang up, he ordered them to remove their clothing and masturbate. He threatened some of the women that "his men" or "his boys" were watching the house and would rape or kill her or her children if she did not comply. Following an investigation, Imler admitted placing the calls and said he was venting stress.

He pled guilty to nine counts of making threats over the telephone. He went to trial on a count which charged him with attempted lewd conduct on a child under the age of 14 years. Imler waived a jury trial and submitted that count upon the police report, a tape recording of a telephone call to a different victim, a memorandum and testimony from a district attorney's investigator, and trial briefs submitted by the parties.

One morning at 7:45 a.m., 12-year-old Jason J. answered the telephone. The caller was Imler. In response to Imler's questions, Jason J. replied that his mother was away and his father was not home. Imler replied that "that's because I have him hostage." Imler demanded $5,000 by the next day, if Jason J. wanted to see his father again. Imler asked Jason what he was wearing, then ordered him to disrobe and touch his penis. Jason J. did not do so, although Imler repeatedly told him to touch himself. Jason J. told Imler he had complied then Imler hung up.

The district attorney's investigator testified that Jason J.'s voice sounded like a 12-year-old boy. Her memorandum indicated that Jason J.'s mother believed he might in fact have complied with Imler's orders.

Police were able to obtain a tape-recorded telephone call placed by Imler to Susan K. on November 20, 1990. This tape recording was admitted into evidence on the issue of intent. In the call, Imler ordered the woman, who was pleading to be allowed to speak with "Pete," to remove her clothing and masturbate using a curling iron. Imler told her to provide him with details about her sex life, demanded that she "talk dirty" to him and persisted in ordering her to describe to him what she was doing with the curling iron.

## DISCUSSION

■ Imler's lewd conduct may be inferred from the circumstances of the offense as well as from the evidence in the tape recording. (*In re Paul C.*

(1990) 221 Cal.App.3d 43, 54 [270 Cal.Rptr. 369].) The intent to commit a violation of Penal Code section 288 is "the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires" of the perpetrator or of the victim. (*Ibid.*)

That Imler committed his acts over the telephone, and was not present to see Jason J. does not compel a contrary result. In *People* v. *Ross* (1988) 205 Cal.App.3d 1548 [253 Cal.Rptr. 178], defendant left threatening notes in the doors of victims' cars. The notes stated that defendant was watching the victims and would shoot them or their children if they did not comply with the instructions in the notes. The defendant was in fact not present, and the victims did not comply with his orders.

We affirmed the defendant's conviction of attempted false imprisonment. We held that "An attempt to commit a crime . . . requires only a specific intent to commit it and a direct but ineffectual act done towards its commission, i.e., an overt ineffectual act which is beyond mere preparation yet short of actual commission of the crime. [Citations.] A defendant can be convicted of the attempt to commit most crimes even though a factual impossibility prevented the commission of the crime itself. [Citation.] . . . If the defendant commits acts which are more than mere preparation for committing the acts, which he reasonably sees as necessary to commit the offense, but because of circumstances unknown to him, essential elements of the substantive crime are lacking, he is culpable for the attempt; it is only when the results the actor intends, if they happened as he envisages, would still not be a crime, can he not be guilty of an attempt. [Citation.]" (*People* v. *Ross, supra*, 205 Cal.App.3d at pp. 1554-1555.) Just as defendant's physical presence was unnecessary to commit the crime of attempted false imprisonment in *Ross*, so too here Imler's physical presence was unnecessary to commit the crime of attempted child molestation.

Imler's acts went beyond mere preparation with the intent to commit the offense. Imler in fact called the victim, spoke to him, and ordered him to commit lewd acts. (See *People* v. *Memro* (1985) 38 Cal.3d 658, 699 [214 Cal.Rptr. 832, 700 P.2d 446].)

In *People* v. *Burns* (1992) 8 Cal.App.4th 715 [10 Cal.Rptr.2d 483] police set up a "sting" operation. Defendant Burns made arrangements with the law enforcement officer posing as a mother who wanted to involve her children in sexual activity with Burns. Burns sent letters to the "mother" describing the acts that would take place with the children and indicating his desire to photograph those acts. He was arrested when he showed up at a motel to meet the mother and the children. Like Imler here, he was convicted of

attempted child molestation. His conviction was affirmed by the Court of Appeal. It held that even though the children were fictitious, and the completion of the crime was impossible, Burns was nevertheless guilty of an attempt because he had the apparent ability to commit the crime and had gone beyond mere preparation. (*People v. Burns, supra,* 8 Cal.App.4th 715, 724-725, citing *People v. Camodeca* (1959) 52 Cal.2d 142, 147 [338 P.2d 903]; *People v. Siu* (1954) 126 Cal.App.2d 41, 43-44 [271 P.2d 575].) Here, we have actual victims, not fictitious ones. Whether the victim complied or not is beside the point. (*People v. Memro, supra,* 38 Cal.3d at pp. 698-699.) Imler's acts could have resulted in a violation of Penal Code section 288.

Imler's reliance upon *People v. La Fontaine* (1978) 79 Cal.App.3d 176 [144 Cal.Rptr. 729] is misplaced. As the People point out, the La Fontaine case involved an act of solicitation which the Court of Appeal held constituted preparation only and did not amount to the offense of a criminal attempt. (*Id.* at p. 183.) Here, Imler ordered the victim to commit lewd acts under the threat against his father.

It matters not that Imler could not touch his victim. "The touching necessary to violate Penal Code section 288 may be done by the child victim on its own person providing such touching was at the instigation of a person who had the required specific intent." (*People v. Austin* (1980) 111 Cal.App.3d 110, 114 [168 Cal.Rptr. 401].) The accused does not have to commit the lewd act. The defendant's intent may be inferred from his conduct which was to order the victim to commit a lewd act upon himself. (*Id.* at p. 115.)

The judgment is affirmed.

Stone, P. J. (S. J.), and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 1992.