Filed 11/3/14  P. v. Fijar CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ISMAEL FIJAR,<br><br>    Defendant and Appellant. | B250544<br><br>(Los Angeles County<br>Super. Ct. No. BA398445) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed.

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant, Ismael Fijar,[1] appeals from the judgment on his conviction of two counts of lewd act on a child under 14 years of age in violation of Penal Code[2] section 288, subdivision (a).  On appeal, appellant contends that (1) the trial court erred by instructing the jury with CALCRIM No. 1110 for the offense of lewd act on a child, and (2) the trial court erred by failing to instruct the jury on the lesser included offense of attempted lewd act on a child.  As we shall explain, appellant's claims lack merit.  Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Appellant's Family

Appellant has two daughters and a son.  The older daughter has four children.  Appellant also has many nieces and nephews.  The victims of the crimes at issue in this appeal are appellant's nieces, Julia and Jacqueline.

#### A.     Jacqueline's Testimony

Jacqueline was friendly with one of appellant's daughters from a young age.  Jacqueline was also close to appellant's wife Socorro F., who passed away in 2001.  When Socorro was alive, Jacqueline would often sleep over at appellant's house to play with her cousin.  The usual sleeping arrangement was that both Jacqueline and her cousin would sleep in a single bed with appellant and Socorro.  Jacqueline would sleep on the side farthest from appellant and next to her cousin.

After Socorro died, when Jacqueline was about nine years old, Jacqueline slept over at appellant's one last time.  Jacqueline woke up that night to appellant fondling her breasts under her clothing.  His breath smelled like alcohol.  Appellant tried to force his hand into her jeans, but Jacqueline's pants were too tight for his hand to fit.  Appellant

---

[1]     Appellant's name appears in three different forms throughout the record.  His name is listed as "Ismail" on the front covers of the briefs, as "Asmael" on the Notice of Completion of the Clerk's Transcript, and as "Ismael" throughout the majority of the remaining record.  Appellant

[2]     The references to statute are to the Penal Code unless otherwise indicated.

was unable to reach Jacqueline's vagina. When Jacqueline began to cry, appellant attempted to shush her by putting his finger to his mouth and making a "shhh" sound. Appellant's older daughter came into the room and asked Jacqueline what was wrong. Jacqueline continued to cry and did not respond.

Appellant's family and Jacqueline's family drifted apart after Socorro's death. Jacqueline did not tell anyone about the abuse until she was 16 years old when she confided in her boyfriend and told him that appellant had molested her. Jacqueline's boyfriend encouraged Jacqueline to tell her parents, but she did not want to because she was afraid they would not believe her or that they would be angry with her for not saying anything sooner. Two years later, in October 2010, Jacqueline's boyfriend told Jacqueline's father that Jacqueline had been molested by a family member.

When Jacqueline finally told her parents about the molestation, her mother contacted Jacqueline's cousins including Julia  The cousins had a meeting where Jacqueline shared her story about having been molested by appellant. Each of the girls also shared something that had happened to them. The young women filed a police report on September 25, 2011, and the police interviewed each young woman individually.

In October 2011, Los Angeles Police Detective Kathleen Roditis had Jacqueline make two pretext phone calls to appellant in an effort to get him to admit to what he had done. Recordings of the calls were played for the jury at trial. Among other things, appellant told Jacqueline that he "never tried to fondle her when he was sober" and, when he got drunk, "the devil is doing his bad things."  Appellant also asked for Jacqueline's forgiveness.

### B.  Julia's Testimony

Appellant's niece, Julia, also spent time in appellant's home. In 1998, when Julia was 11 years old, she was left in appellant's care along with two of her younger cousins. After Julia had prepared food for the other children, appellant came in the room and started rubbing his erect penis on her thigh through his pants. Julia tried to fend him off with her elbow, but he continued to rub her for three minutes. When one of the other

3

children present said, "It hurts her [Julia]," appellant stopped. Although Julia was uncomfortable with what happened, she did not tell anyone about it.

In October 2011, Detectives Kathleen Roditis and Hilda Smith interviewed appellant, a recording of which was played for the jury. Appellant admitted in the interview that Jacqueline slept over a lot, but said that he did not remember molesting her. When asked about Julia, appellant said that he did not remember the babysitting incident at all. Also during the interview, appellant described an incident where Julia's sister, Sophia asked him for a ride home in his truck. He said that he let Sophia in the truck and told her that she looked pretty. He also admitted to grabbing her breasts, but nothing else.

## II.    The Trial

Appellant was arrested and charged with four counts of lewd act on a child under 14 years of age (§ 288, subd. (a)), in counts 1, and 3-5; and in count 2, continuous sexual abuse of a child under 14 years of age in violation of section 288.5.

During the trial, in addition to Jacqueline and Julia's testimony about appellant's conduct, Sophia testified to prior bad acts committed by appellant. Sophia recalled two incidents when appellant allegedly touched her. In one incident, while she was spending the night at appellant's apartment, she woke up to appellant reaching up to her from the bottom of the bed. Appellant's hand nearly reached Sophia's breast before she twisted away. In another incident, when Sophia was 14 years old, appellant picked her up from school in his single-bench pickup truck. As appellant was driving, he leaned over, put his hand on Sophia's leg over her clothes, rubbed her vagina, and then fondled her breasts one at a time.

Other family members testified on appellant's behalf. Appellant's older daughter, who lived in appellant's apartment with her husband and her son, testified that she only remembered Jacqueline spending the night at her parent's house once. She testified that Jacqueline never spent the night at her house in 1995, 1996, 1997, or 1998. Appellant's older daughter also said that Sophia never spent the night. Appellant's other daughter

4

testified that she did not remember Jacqueline ever spending the night. Appellant's grandson testified that he did not remember anyone babysitting him as Julia had claimed.

One of appellant's nieces testified that her family lived with appellant for a while growing up. She testified that she never felt uncomfortable around appellant, and that she did not remember Jacqueline ever sleeping over. Another family friend also testified that appellant never made her feel uncomfortable. Finally, one of appellant's great-nieces testified that appellant never said or did anything that made her feel uncomfortable.

The jury found appellant guilty as charged in counts 3 and 5 involving Jacqueline and Julia of the offense of lewd act on a child under the age of 14 years in violation of section 288. The jury found appellant not guilty in counts 1, 2 and 4, but found appellant guilty of the lesser included offense of battery in counts 1 and 2.[3] Appellant was sentenced to a total of 30 years to life in state prison.

This appeal followed.

## *DISCUSSION*

### I. The Trial Court Properly Instructed the Jury Using CALCRIM No. 1110

Appellant contends the trial court erred by instructing the jury using CALCRIM No. 1110 for the offense of lewd act on a child. He argues that this instruction is constitutionally flawed because it removes an element of the offense from the jury's consideration—namely the requirement that the touching be conducted in a lewd manner.

### A. Standard of Review

"We determine whether a jury instruction correctly states the law under the independent or *de novo* standard of review. Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' 'Instructions should be interpreted, if possible, so as to support the

---

[3] The court dismissed the convictions in counts 1 and 2 in the interest of justice.

5

judgment rather than defeat it if they are reasonably susceptible to such interpretation.'" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

**B.      Section 288, Subdivision (a) Does Not Require that the Touching Be Conducted in a Lewd Manner**

Appellant argues that a conviction under section 288, subdivision (a), lewd act on a child, requires proof that the touching was conducted in a lewd manner. As a result, appellant contends the trial court erred by instructing the jury with CALCRIM No. 1110 because the form instruction removed an element of the crime – that the act be committed lewdly – from the jury's consideration.

Section 288, subdivision (a) provides that, "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." (§ 288, subd. (a).)

CALCRIM No. 1110 in effect at the time of trial in this case and as given to the jury, provided in relevant part:

> "The defendant is charged in Counts 1,3,4 and 5 with committing a lewd or lascivious act on a child under the age of 14 years.

> "To prove that the defendant is guilty of this crime, the People must prove that:

>> "1.      The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;
>> "2.      The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;
> "AND
>> "3.      The child was under the age of 14 years at the time of the act.

> "The touching need not be done in a lewd or sexual manner.

6

"Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child is not required for lewd or lascivious conduct.

"Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun." (Original italics.)

Appellant takes issue with the seeming contradiction between the crime as described in section 288, subdivision (a) and CALCRIM No. 1110 because the Penal Code section imposes criminal liability on "any person who willfully and *lewdly* commits any lewd or lascivious act," while CALCRIM No. 1110 instructs the jury that, "[t]he touching need not be done in a lewd or sexual manner." (§ 288 subd. (a), emphasis added.) As a result of this apparent contradiction, appellant argues that instructing the jury with CALCRIM No. 1110 removed an essential element of the offense from the jury's consideration—namely, that the touching be conducted in a lewd manner. Therefore, he argues, his Sixth Amendment right to a jury trial and Fifth and Fourteenth Amendment due process rights were violated. As we shall explain, we disagree.

The language in CALCRIM No. 1110 at issue in this case comports with the statutory elements of the offense of lewd or lascivious act on a child. In discussing the definition of a "lewd" act under section 288, the Supreme Court has explained that section 288 itself declares that to commit such an act "willfully and lewdly" means to do so "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires" of the persons involved. (See *People v. Martinez* (1995) 11 Cal.4th 434, 444; see also *In re Smith* (1972) 7 Cal.3d 362, 365.) The focus of the offense is on the intent of the perpetrator. "[T]he courts have long indicated that section 288 prohibits all forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the

7

offending act." (*People v. Martinez, supra,* 11 Cal.4th at p. 441). "[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, although it may have the outward appearance of innocence, is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute. . . .' [Citation.]" (*Id.* at p. 444.) Thus, the court in *Martinez* rejected an interpretation of section 288 which would have required proof that the touching be committed in a lewd manner. (*Id.* at p.442.)

In view of the Supreme Court precedent, the sentence to which appellant objects here correctly states the law and makes it plain to the jury the physical act of touching involved need not be seen as lewd or offensive in and of itself. Even a physical touching that may appear innocent, if done with the requisite statutory intent, can be found to be a prohibited act under section 288. "As suggested in [*In re*] *Smith,* we can only conclude that the touching of an underage child is 'lewd or lascivious' and 'lewdly' performed depending entirely upon the sexual motivation and intent with which it is committed." (*People v. Martinez, supra,* 11 Cal.4th at p. 449; accord, *People v. Lopez* (1998) 19 Cal.4th 282, 289 [any touching of a child under the age of 14 violates section 288, subdivision (a), even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the victim].) In short, CALCRIM No. 1110 does not improperly negate a statutory element of section 288.

As both the respondent and appellant here acknowledge, other courts have examined identical language in CALCRIM No. 1120, which instructs on section 288.5 (continuous sexual abuse of a child under the age of 14).

In *People v. Sigala*, Division Five of this district, relying on *Martinez*, concluded that a violation of section 288.5 does not require defendant's touching of the child be done in a lewd or sexual manner. (*People v. Sigala* (2011) 191 Cal.App.4th 695, 700-701.) As a result, the *Sigala* court concluded that the statement in CALCRIM No. 1120, which instructed the jury that the touching need not be done in a lewd or sexual manner

8

was a correct statement of the law. (*Ibid.*) The *Sigala* court further noted that: "[i]t follows from our holding that the identical definition of lewd or lascivious conduct in CALCRIM No. 1110, defining a violation of section 288, is also a correct statement of law under *Martinez*." (*Id.* at p. 701, fn. 5.)

Here, appellant argues that *Sigala* suffers from a fatal problem because it relied on *Lopez* and *Martinez* both of which were decided before CALCRIM No. 1110 was created; and they parsed a CALJIC instruction that did not contain the language challenged here. We are not persuaded.

The fact that CALCRIM No. 1110 did not exist at the time *Lopez* and *Martinez* were decided is irrelevant. The crux of appellant's argument is that there needs to be a lewd touching, that is, the act itself must be inherently lewd; *Martinez* specifically rejected the argument section 288 is violated only if a defendant touches a child in an inherently lewd manner. (*People v. Martinez, supra*, 11 Cal.4th at p. 442.)

More recently, Division Four of this appellate district also analyzed this language (in the context of CALCRIM No. 1120) in *People v. Cuellar* (2012) 208 Cal.App.4th 1067. The court in *Cuellar* did not conclude the instruction was infirm, constitutionally or otherwise. *Cuellar* stated, however, that the language was "possibly confusing" (*People v. Cuellar, supra,* 208 Cal.App.4th at p. 1071). Nonetheless, the court concluded that any error with respect to the instruction was harmless, finding that reading the instructions as a whole and given the overwhelming evidence against the defendant, the language did not mislead the jury. (*Id.* at p. 1072.) Subsequent to *Cuellar*, and effective February 26, 2013, the Advisory Committee on Criminal Jury Instructions deleted the sentence from the form jury instructions for both CALCRIM No. 1110 and No. 1120. (Judicial Counsel of California Criminal Jury Instructions, CALCRIM Nos. 1110 and 1120 (February 2013 ed.) pp. 831, 842).[4]

---

[4] The instruction in *Cuellar* stated in part: "Lewd or lascivious conduct is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child. The touching need not be done in a lewd or sexual manner." (*People v.*

Nevertheless, the revision to CALCRIM No. 1110 does not alter our assessment of the validity of CALCRIM No. 1110 as given in this case. There has been no change in the well-established law that a violation of section 288 does not require an explicitly sexual or inherently lewd touching. In sum, CALCRIM No. 1110 correctly stated the law and did not remove an element of the offense from the jury's consideration.

## C.      Even if the Court Erred by Instructing the Jury Using CALCRIM No. 1110, Any Error Was Harmless

Even if the trial court erred by instructing the jury using CALCRIM No. 1110, any error was harmless.

All the touching in this case was assuredly sexual. In the relevant count of lewd act on a child pertaining to Jacqueline, she testified that appellant fondled her breasts and tried to force his hand under the front of her pants. In count 5 involving Julia, she testified that appellant rubbed his erect penis on her thigh through his pants. In addition, there was sufficient evidence of appellant's guilt. Both Jacqueline and Julia gave thorough, detailed testimony. Moreover, although appellant did not explicitly confess in this case, he made a number of inculpatory statements when Jacqueline made a recorded pretext phone call to appellant while at the police station and when police interviewed him. Furthermore, the defense evidence here to dispute the victims' testimony was relatively weak. The defense evidence was made up of the testimony of a few of appellant's family members mainly consisting of character testimony. Three family members also testified that they did not remember Jacqueline spending the night. However, appellant admitted Jacqueline spent the night on many occasions. Therefore,

---

*Cuellar, supra*, 208 Cal.App.4th at p. 1070, italics omitted.) The defendant argued "the second sentence is inconsistent with the first and negates the requirement that the touching be done in a lewd or lascivious manner." (*Id.* at p. 1071.) The *Cuellar* court agreed the sentence, "[t]aken by itself," was capable of the defendant's interpretation and "[a]t best, it is unfortunate and possibly confusing," faulting *Sigala*'s analysis as failing to "focus on just what information the second sentence is designed to impart that is not already stated in the first sentence." (*Ibid*.) It urged revising the instruction to make "the two sentences . . . complement each other" and remove "any arguable inconsistency." (*Id.* at p. 1072.)

even if we conclude the trial court erred by instructing the jury using CALCRIM No. 1110, any error was harmless.

**II.     The Court Did Not Err by Failing to Instruct on the Lesser Included Offense of Attempted Lewd Act on a Child**

Appellant argues that the trial court erred by failing to instruct the jury on the lesser included offense to section 288, subdivision (a), attempted lewd act on a child. We disagree.

**A.     Standard of Review**

Courts review the failure to give a lesser included offense instruction under the *de novo* standard of review. (*People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1411.) "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in evidence. . . . [T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. 'Substantial evidence' in this context is 'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]' that the lesser offense, but not the greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162, original italics.) Finally, "in deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Ibid.*) The court has no obligation to give an instruction on a lesser included offense when there is no evidence that the offense was less than that charged. (*Id.* at p. 162.)

**B.     The Lesser Included Offense of Attempted Lewd Act on a Child Was Not Required in This Case**

"An attempt to commit a crime . . . requires only a specific intent to commit it and a direct but ineffectual act done towards its commission, i.e., an overt ineffectual act which is beyond mere preparation yet short of actual commission of the crime." (*People v. Imler* (1992) 9 Cal.App.4th 1178, 1181.)

11

Here, the evidence for count 3, lewd act on a child involving Jacqueline, and count 5, lewd act on a child involving Julia was provided through the testimony of Jacqueline and Julia. As detailed above, the two women described the incidents in a manner that established all the elements of the offense of lewd act on a child. No evidence was presented that appellant took a "direct but ineffectual" step toward the commission of the crime. (*People v. Imler*, *supra*, 9 Cal.App.4th at p. 1181.) Rather, the evidence presented was that appellant completed each crime. In Jacqueline's case, appellant completed the crime of lewd act on a child by touching Jacqueline's breast and the area above her waistline "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (§ 288, subd. (a).) In Julia's case, appellant completed the crime by touching her breasts and rubbing her vagina over her pants "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (*Ibid*.) This is not a case where the accused admitted to engaging in certain acts which fell short of the completed crime or where the accused offered an alternative, innocent explanation for his conduct. Here, appellant claimed his innocence; his defense was that none of the alleged crimes occurred and that the victims had fabricated the claims against him.

Thus, the jury's choice was clear cut. If the jury believed the victims' version of events, then the jury would conclude appellant had committed the crimes alleged in counts 3 and 5, and if the jury believed appellant, then the jury would acquit appellant of these charges. Under the circumstances of this case, there was no evidence from which a reasonable jury could conclude that the lesser, but not the greater offense was committed.

Consequently, the lesser included offense of attempted lewd act on a child was not warranted in this case. The trial court did not err by failing to *sua sponte* instruct the jury on the lesser included offense of attempted lewd act on a child.

## *DISPOSITION*

The judgment is affirmed.

WOODS, J.

We concur:

PERLUSS, P. J.                    ZELON, J.