Filed 9/25/15  P. v. McNeeley CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B258076 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA060393) |
| v. | |
| NEIL BENJAMIN McNEELEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eric P. Harmon, Judge.  Affirmed as modified with directions.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General and Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Neil McNeeley was charged with ten counts of lewd act upon a child under 14 years old involving three victims: S. D., My. C., and D. F. A jury convicted him on the count relating to S. (count 1) and two of the six counts relating to My. (counts 3 and 4); it acquitted defendant on the other seven counts.

On appeal, defendant contends the judgment must be reversed because the trial court failed to instruct the jury on the lesser included offense of attempted lewd act. He also contends the court erred by failing to award him presentence custody credit. We modify the judgment to reflect 370 days of local custody credit and 55 days of conduct credit. In all other respects, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1.  *The Charges*

The information charged defendant with ten counts of lewd act upon a child under the age of 14. (Pen. Code, § 288, subd. (a).)[1] Count 1 involved S. during the period February 1, 2013 to June 30, 2013. Counts 2, 3, 4, 6, 7 and 8 involved My. during the period January 1, 2009 to December 31, 2012. Finally, counts 5, 9 and 10 involved D. during the period between January 1, 2009 and December 31, 2012. The information contained no specific factual allegations and, with the exception of the victim's name and a date range specific to each victim, the ten counts were stated in an identical manner. Further, and as to all counts, the information included a special allegation under section 667.61, subdivisions (b) and (e), that the crimes were committed against multiple victims. Defendant pled not guilty on all counts and denied the special allegations. The matter proceeded to trial.

---

[1] All further code references are to the Penal Code.

2. *The Victims' Testimony*[2]

    A. *S. D.*

S., who was eight years old at the time of trial, spent time with defendant when she visited the home of her aunt, J. M., defendant's sister. S. testified that defendant touched her inappropriately on three separate occasions.

On Valentine's day in 2013, S. was sleeping at her aunt's house. She awoke to find defendant's hand in her pajama pants and against her skin, touching her private area. After S. "scooted away" from defendant, he moved toward her and again put his hand in her pants and touched her private area. S. moved away a second time, and defendant again moved and touched S. under her pajama pants.

S. recalled a second incident that occurred in June 2013 while she was inside an R.V. trailer parked on her aunt's property. S. and her brother and sister would sometimes watch television in the trailer. On one particular occasion, S. was watching television alone in the trailer. Defendant entered the trailer and started to give S. a hug. He put one arm around S. and placed his other hand down the front of S.'s pants, touching her private area.

Finally, S. testified that in June 2013 she was alone with defendant in a shed located in her aunt's backyard. Defendant touched S.'s hand and moved it so that she touched his penis.[3]

    B. *My. C.*

My., whose grandmother De. M. was married to defendant, also testified at defendant's trial. My. frequently stayed at defendant's home starting when she was approximately eight or nine years old. Relevant here, My. testified about two specific instances when defendant touched her inappropriately.

---

[2]     Because a failure to instruct on a lesser included offense is necessarily harmless with respect to the counts on which defendant was acquitted, we discuss only the evidence pertinent to the counts on which the jury convicted defendant.

[3]     It is unclear from the testimony whether defendant placed S.'s hand underneath or on top of his clothing.

My. testified that on one occasion, she and defendant were in defendant's car together. Defendant drove the car to a secluded park surrounded by trees. While parked there, defendant pulled down his pants and underwear, then grabbed My.'s hand and placed it directly on his penis. Defendant moved My.'s hand up and down while holding her hand on his penis.

My. testified about another incident that occurred in an R.V. trailer in Palmdale. My. and defendant slept overnight in the trailer together. When defendant woke up the next morning, he placed My.'s hand on his penis and moved it up and down until he ejaculated.

### 3. *Defendant's Testimony*

Defendant testified at trial in his own defense. Defendant told the jury that his wife, De., suffered from serious mental illness and often behaved erratically during their turbulent marriage. Defendant explained that just before the allegations of inappropriate touching surfaced, he had decided to leave his wife. He claimed De. did not want him to leave for financial reasons and, in retaliation for his decision to leave, encouraged all the witnesses who ultimately testified for the prosecution to lie and say that he touched the girls inappropriately. Defendant and his wife were separated at the time of trial.

Defendant repeatedly denied he ever touched My. or S. in an inappropriate manner. As to the particulars of the victims' testimony, defendant admitted he touched S. under each of the three circumstances she described, but denied doing anything inappropriate. For example, defendant said he had been alone with S. in the backyard shed. However, he said he was trying to access some of his mother's heirlooms from a cedar chest and was having difficulty because there were many bags stacked on top of and inside the chest. Defendant said he lifted S. and asked her to pull on some of the bags. He put her down on the floor behind him when the bags started to fall. With respect to the incident in the R.V. trailer, defendant said he was in the trailer with his brother watching television. S. and several other children were running in and out of the trailer. S. then jumped up and sat on the arm of the chair in which defendant was sitting. In order to keep S. from falling, he held her by her hips. According to

4

defendant, S. passed gas and he swatted her on the butt. Finally, with respect to the Valentine's day incident, defendant admitted he touched S. while she was in her bed, but stated he only touched her back to examine an abrasion inflicted by her brother. He also rubbed her head in an effort to console her.

Other than denying that he ever touched My.'s hand and moved it toward his private area, defendant did not specifically testify about the incidents described by My. Defendant described My. as sometimes "very volatile" and "nasty." He characterized his relationship with My. as "normal" and explained that he spent a great deal of time with her (and other children) in the outdoors, teaching them to drive, camp and ride ATVs.

4.      *Request for Instruction on Lesser Included Offenses*

Defendant asked the court to instruct the jury regarding simple assault, simple battery and attempted lewd act as lesser included offenses of lewd act. The court denied the request. The court noted that under California law, battery is not a lesser included offense of lewd act. Further, as to assault and attempted lewd act, the court denied defendant's request for instructions because, in its view, there was no "rational interpretation of the evidence where the jury could find that he did the touching in a non-sexual way. In fact, all of the evidence has been either there was no touching at all, which is his version, or that there is a touching in a sexual nature."

5.      *Verdict and Sentence*

The jury rendered guilty verdicts on counts 1, 3 and 4. As to all three counts, the jury also found the special allegation of multiple victims true. The jury acquitted defendant on the remaining seven counts.

On each of the three convictions, the court sentenced defendant to 15 years to life under section 288, subdivision (a), and section 667.61, subdivisions (b), (c) and (e)(4). The court further ordered the sentences to run consecutively under section 667.61, subdivision (*i*), resulting in a total sentence of 45 years to life. The court did not award presentence custody credit for time already served or for good conduct.

Defendant timely appealed.

## CONTENTIONS

Defendant contends (1) the judgment of conviction must be reversed because the trial court refused to instruct the jury regarding the lesser included offense of attempted lewd act, and (2) the court improperly denied his request for 425 days of presentence custody and conduct credit.

## DISCUSSION

1. *The Court Did Not Err by Denying Defendant's Request to Instruct the Jury on the Lesser Included Offense of Attempted Lewd Act*

    A. *The Jury's Convictions on Counts 1, 3 and 4 Relate to Specific Courses of Conduct*

As an initial matter, we address defendant's assertion that it is not possible to determine which acts formed the basis of the jury's convictions on counts 1, 3 and 4. Although not expressly articulated, we construe defendant's argument to be that if the court committed a prejudicial error as to one count, we should presume that error to be prejudicial as to all counts involving the same alleged victim. We disagree.

First, with respect to count 1—the only count in which S. was the alleged victim—it is not necessary to ascertain which incident, of the three S. recounted, the jury selected as the basis of the conviction. Here, the court properly instructed the jurors that the prosecution presented evidence of more than one act to prove defendant committed the charged offenses, and that in order to convict on any count, the jurors must unanimously agree which act defendant committed. No more was required. (See *People v. Jones* (1990) 51 Cal.3d 294, 321-323 (*Jones*).)

With respect to counts 3 and 4, in which My. was the alleged victim, our analysis is somewhat different. It is true, as defendant observes, that the People did not specify in the information which particular conduct it intended to prove in connection with each of the six enumerated counts involving My. However, the Supreme Court has acknowledged that it can be difficult for child witnesses to identify specific incidents of sexual abuse where the child is abused by the same person over an extended period of time. (*Jones, supra*, 51 Cal.3d at pp. 305, 313-316 [holding a child's generic testimony

6

about repeated, indistinguishable instances of sexual abuse may constitute substantial evidence to support multiple convictions].) Accordingly, it is not uncommon for the prosecution to charge a defendant with multiple undifferentiated counts in cases involving repeated sexual abuse of a child, as the People did here. (*Id*. at pp. 321-323.)

Generally, a defendant may require the prosecution to identify the specific facts it intends to prove with respect to each count charged in the information. (See, e.g., *People v. Salvato* (1991) 234 Cal.App.3d 872, 882 ["[W]here several distinct potentially criminal acts are shown, and only one charged, the defendant is entitled, at the commencement of trial (or as soon as practically possible), to a prosecutorial election upon demand."].) However, there is no evidence defendant asked the prosecutor to make such an election in this case. Accordingly, the trial properly proceeded on 10 multiple counts of lewd act, undifferentiated except as to the name of the victim and a general date range for each of the three victims.

In some situations, a prejudicial instructional error on one undifferentiated count might require reversal of all convictions on similar counts, as defendant seems to suggest. However, that is not the case here, as we are confident the jury's verdict on count 3 related to the parked car incident and the verdict on count 4 related to the R.V. trailer incident. During closing argument, the prosecutor summarized the evidence and specifically stated which acts he believed proved each of the counts, beginning with count 1 and ending with count 10. With respect to the counts involving My., the prosecutor discussed the evidence regarding an incident in the garage, then stated "that's why you should return a verdict of guilty on Count 2." Then he said, "We go to Count 3. This is the second incident that happened in the defendant's car that My. told you about." He reminded the jury that the incident occurred in a parked car, in a secluded wooded spot, and that defendant took My.'s hand and placed it on his penis. After that, the prosecutor described the incident that occurred in the trailer: "They went to pick up the trailer, and she stated the next day, when they woke up, the defendant tried to take her pajama bottoms off, but he couldn't. And she told you how the defendant had his pants off, how he grabbed her hand and how he moved her hand to his

7

exposed naked penis and how he moved her hand on top of his penis up and down until he ejaculated." He then explained how the evidence satisfied the elements on "count 4."

The jury's conduct during deliberations indicates the jurors adopted the prosecutor's numbering scheme. Immediately after the jury began its deliberations, the jurors asked the court to clarify which incidents corresponded to the enumerated counts. When the court asked the jury foreperson about the request, the foreperson noted that the verdict forms specified the count number and the name of the victim, but did not describe a particular incident. The court stated that the counts were not tied to any specific conduct, and that the jury needed to reach a unanimous verdict involving the same act by defendant in order to convict.

The next day, the jury was apparently still concerned about the correlation between specific conduct and the enumerated counts, as the foreperson requested a copy of the prosecutor's closing argument power point presentation. The court advised the jury that it could not provide a copy of the presentation because it was not in evidence. However, we are confident the jurors were able to reconstruct the prosecutor's numbering scheme. Indeed, later in the deliberation process, the jury asked the court to re-read certain witness testimony and specified exactly what it wanted: "My. C. testimony *for the trailer incident count 4*." (Emphasis added.) The jury also requested to hear defendant's testimony "regarding My. *count 3 & 4 regarding when the defendant was with her in the car at the park & the trailer in Palmdale*." (Emphasis added.) These two requests, in which the jury specified both the conduct and the count number exactly as the prosecutor laid them out in his closing argument, reflect that the jury's convictions on counts 3 and 4 relate to the parked car and trailer incidents, respectively. The fact that the jury did not convict defendant on count 2, the first count involving My., further supports our conclusion that the jury associated specific conduct with each of the enumerated counts in accordance with the prosecutor's closing argument.

B.    *With Respect to Counts 1, 3 and 4, There Was No Substantial Evidence Defendant Attempted and Failed to Commit a Lewd Act*

8

Defendant's primary argument is that the court erred by failing to instruct the jury regarding the lesser included offense of attempted lewd act. We consider only whether the court should have given an attempt instruction as to the three counts on which the jury convicted defendant and, as to those three counts, we conclude the court had no duty to so instruct.

" 'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.' " (*People v. Rogers* (2006) 39 Cal.4th 826, 866 (*Rogers*).) "A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' [Citation.] Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. [Citation.] 'The rule's purpose is . . . to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence.' [Citation.] In light of this purpose, the court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense. [Citation.]" (*People v. Shockley* (2013) 58 Cal.4th 400, 403-404 (*Shockley*).) "We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense." (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

With respect to his conviction on count 1, the only count in which S. was alleged to be the victim, defendant contends an attempt instruction was appropriate because it was undisputed that he touched S., and the only issue for the jury to decide was whether he touched her with lewd intent. Under defendant's theory, no attempt instruction was required.

Section 288 provides, in pertinent part, that " 'any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or

member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . . ' " (§ 288, subd. (a).) " '*Any* touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' [Citation.]" (*Shockley, supra*, 58 Cal.4th at p. 404.) Thus, the distinguishing element of a lewd act, as opposed to an assault or battery, is the perpetrator's state of mind.

"An attempt to commit a crime has two elements: the intent to commit the crime and a direct ineffectual act done toward its commission." (*People v. Carpenter* (1997) 15 Cal.4th 312, 387.) "The intent to commit a violation of [section 288] is 'the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires' of the perpetrator or of the victim. [Citation.]" (*People v. Imler* (1992) 9 Cal.App.4th 1178, 1181 (*Imler*).) For purposes of an attempt, specific intent may be, and usually must be, inferred from circumstantial evidence. (*People v. Davis* (2009) 46 Cal.4th 539, 606.) In order to evaluate the defendant's claim of error, we review the testimony of the two victims, as well as the defendant, to determine whether there was substantial evidence that defendant did not commit a lewd act, but attempted to do so.

S. recalled three separate incidents of inappropriate touching, any one of which could have formed the basis of the jury's conviction on count 1. As described in detail above, S. testified that defendant placed his hand inside her clothing and directly on her private area on two separate occasions. On another day, defendant grabbed S.'s hand and placed it on his penis. This evidence, if credited by the jury, proved completed lewd acts. No reasonable jury could conclude, on the basis of S.'s testimony, that defendant attempted but failed to complete a lewd act.

Similarly, no reasonable jury could conclude, based upon defendant's testimony, that he attempted to commit a lewd act. Defendant testified that he touched S. on each of the three occasions she described, but stated he had some legitimate reason to do so (e.g., to place a damp cloth on an abrasion on her back, to prevent her from falling off a

10

chair, and to lift her so she could reach an item on a high shelf). Defendant flatly denied touching S. with lewd intent. Therefore, if the jury believed defendant and rejected S.'s testimony, it could not reasonably have found defendant committed either a lewd act or an attempted lewd act because lewd intent, which defendant denied, is a necessary element of both offenses. (See *Imler, supra*, 9 Cal.App.4th at p. 1180-1181 [noting commission of a lewd act and attempt to commit a lewd act both require the intent to arouse, appeal to, or gratify the lust or passions or sexual desires of the perpetrator or the victim].) Accordingly, we conclude there was no substantial evidence that defendant attempted but failed to commit a lewd act upon S., and therefore the court had no duty to instruct the jury regarding attempt with respect to count 1.

We reach a similar conclusion as to the two counts involving My. Like S., My. described acts that constituted completed lewd acts and could not reasonably be construed as attempted lewd acts. As to count 3, My. testified that defendant took My.'s hand and placed it on his exposed penis while they sat in defendant's parked car. With respect to count 4, which occurred in the R.V. trailer in Palmdale, defendant placed her hand on his penis and moved her hand until he ejaculated. This evidence, if credited by the jury, proved defendant completed lewd acts. No reasonable jury could find defendant attempted, but failed, to commit a lewd act under the circumstances My. described.

Further, if the jurors believed defendant rather than My., they could not have found defendant guilty of either committing a lewd act or attempting to do so. Defendant denied ever doing anything inappropriate with My. and described his relationship with her as "normal." Defendant did not offer an alternative version of the events My. related with respect to counts 3 and 4. Thus, the jury could only choose to believe, or disbelieve, My.'s testimony. Regardless, the jury had no basis upon which it could reasonably infer that defendant attempted, but failed, to commit a lewd act. To the extent defendant suggests we should question My.'s credibility, we note that "[i]n deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*People v. Breverman* (1998)

11

19 Cal.4th 142, 162 (*Breverman*); see also *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [credibility determinations are the exclusive province of the jury].)

 2. *The Court Erred by Failing to Award Presentence Custody and Conduct Credit*

 The parties agree the trial court erred by failing to award defendant presentence custody and conduct credit. They also agree defendant is entitled to 425 days total custody credit, representing 370 days of local custody credit and 55 days of conduct credit. The parties are correct.

 At the time of sentencing, the court must determine the number of days the defendant was in local custody prior to the sentencing hearing and credit that time against the term of imprisonment. (§ 2900.5, subd. (a); Cal. Rules of Court, rule 4.310; *People v. Buckhalter* (2001) 26 Cal.4th 20, 30 (*Buckhalter*).) Here, defendant was arrested and incarcerated on August 1, 2013, and sentenced on August 5, 2014. The record indicates defendant remained incarcerated during that 370 day period. Accordingly, defendant is entitled to a 370 day local custody credit.

 Also at the time of sentencing, the court must determine whether, and to what extent, a defendant is entitled to presentence conduct credit. Absent contrary authority, a defendant receives conduct credit against his term of imprisonment for good behavior and willingness to work during time served prior to the commencement of the sentence. (*People v. Brewer* (2011) 192 Cal.App.4th 457, 461 (*Brewer*).) Section 4019 provides that where, as here, a defendant convicted of a felony has been incarcerated during the period after his arrest and before sentencing, he is entitled to a one day conduct credit for each four day period served, unless he failed to perform assigned labor. (§ 4019, subds. (a)(4), (b); *Buckhalter, supra*, 26 Cal.4th at p. 30.) Section 4019 provides an additional one day conduct credit for each four day period served, unless the defendant failed to comply satisfactorily with the facility's reasonable rules and regulations. (§ 4019, subds. (a)(4), (c); *Buckhalter, supra*, 26 Cal.4th at p. 30.) In addition, and as defendant acknowledges, under section 2933.1, subdivision (a), a person convicted of a felony offense listed in section 667.5, subdivision (c), may not earn conduct credit in

12

excess of 15 percent of time served. (§ 2933.1, subd. (a); *Buckhalter, supra*, 26 Cal.4th at pp. 31-32.) The 15 percent conduct credit limitation applies in this case because defendant was convicted under section 288, subdivision (a), which is an enumerated offense listed in section 667.5. (§ 667.5, subd. (c)(6).) Accordingly, defendant is also entitled to 55 days of conduct credit.

Here, the court denied defendant's request for local custody and conduct credit in reliance on a September 20, 2006 amendment to section 667.61, subdivision (j). That amendment to section 667.61, which provides an alternative sentencing scheme for certain sex offenses, struck language providing that a minimum term of 15 or 25 years imposed under that section could not "be reduced by more than 15 percent for credits granted pursuant to Section 2933, 4019, or any other law providing for conduct credit reduction." (Compare Stats. 2006, ch. 337, § 33 with Stats. 1998, ch. 936, § 9.) However, nothing in that amendment, or the current version of section 667.61, relieves the court of the duty to award presentence custody credit under the circumstances present here. (See, e.g., *People v. Goldman* (2014) 225 Cal.App.4th 950, 961-962 [award of conduct credits under section 2933.1 is not discretionary]; *Brewer, supra*, 192 Cal.App.4th at pp. 462-464 [section 4019 conduct credit available to defendants who receive indeterminate life sentences].)

### *DISPOSITION*

The judgment is modified to award defendant 425 days total presentence custody credit: 370 days local custody credit under section 2900.5, and 55 days presentence conduct credit under sections 2933.1, subdivision (a) and 4019, subdivisions (b) and (c). As modified, the judgment is affirmed. The trial court is directed to prepare an

amended abstract of judgment and send a copy to the Department of Corrections and Rehabilitation.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.

WE CONCUR:

EDMON, P. J.

JONES, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14