Filed 11/23/15  P. v. Bonilla CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE SAUL BONILLA,<br><br>    Defendant and Appellant. | F067224<br><br>(Super. Ct. No. BF137948A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Jose Saul Bonilla appeals from a judgment convicting him of one count of rape of a child and two counts of lewd act on a child.  He challenges:  (1) the sufficiency of the evidence to support his lewd act conviction in count 1; (2) the trial court's failure to instruct on attempted lewd act as a lesser included offense of count 1; (3) the admission of uncharged sexual offense evidence; and (4) the imposition of a 25-year-to-life term for

his rape conviction in count 2. We agree with Bonilla's last contention, and the People concede, that the 25-year-to-life term imposed for his rape conviction violated the ex post facto clauses of the United States and California Constitutions because he committed the offense before the effective date of the applicable provision of the "One Strike" law (Pen. Code,[1] § 667.61). We therefore vacate Bonilla's sentence and remand the matter for resentencing under the law in effect at the time Bonilla committed his offenses. In all other respects, we affirm the judgment of conviction.

## I.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

### A.     Counts 2 and 3:  Rape and Lewd Act against L.J.

L.J.,[2] who was 17 years old at the time of trial in February 2013, testified that, when she was around 10 years old, she lived across the street from Bonilla. At that time, she frequently went over to his house because she was friends with his daughter.

One evening when L.J. went over to Bonilla's house, he met her at the front door. When she asked if his daughter was home, Bonilla said no, grabbed L.J. by the arm, and pulled her inside the house. He then pulled her into his bedroom and placed her on his bed, where he pulled down her pants and underwear. While holding L.J. down, Bonilla had sexual intercourse with her. At some point, he remarked that "his wife didn't give him any." Afterwards, Bonilla threatened to kill L.J. if she told anyone what happened. Due to her resulting fear, L.J. did not report the rape for several years.

---

[1]     Further statutory references are to the Penal Code unless otherwise specified.

[2]     In this opinion, certain persons are identified by initials, abbreviated names and/or by status in accordance with our Supreme Court's policy regarding protective nondisclosure. No disrespect is intended.

In July 2011, L.J. described the incident to a detective assigned to the police department's child abuse sexual assault unit. At trial, the detective opined that it was not uncommon for child abuse victims to delay reporting sexual abuse or to give inconsistent accounts of the abuse at different times. In the detective's experience, children were often reluctant to provide full disclosures due to unaddressed feelings of guilt and shame.

**B.      Uncharged Sexual Offense:  Indecent Exposure against L.J.**

On another occasion in May 2008, L.J. was outside in her front yard with a friend, when she saw Bonilla, who was sitting on the side of his house, "flashing [her] his penis" and "[j]acking off." After Bonilla continued to do this for some time, L.J. felt like she could not "keep dealing with this harassment" and went inside her house to tell her mother.[3] When she talked about the incident with the police in 2008, she did not tell them about Bonilla raping her when she was 10 years old. J.M. explained she was still scared and embarrassed about what had happened to her.

**C.      Count 1:  Lewd Act against J.M.**

J.M., who was 12 years old at the time of trial, testified that on June 28, 2011, she was playing outside with her friend K.B., when they encountered Bonilla riding a bicycle. Bonilla approached J.M. and asked her if she could show him around the neighborhood to see if there were any houses for sale. J.M. agreed because Bonilla seemed "nice." K.B. started heading back to his house and J.M. led Bonilla in the same direction.

When they were near K.B.'s house, Bonilla remarked to J.M. that "this one girl comes in my room at night and she tries to have sex with me." Bonilla then gave J.M. a kiss on her cheek and told her she was beautiful. After Bonilla kissed her, J.M. ran to K.B.'s house to tell someone what happened. J.M. was scared when Bonilla kissed her cheek because he was a "total stranger" and she knew it was wrong.

---

**3**      On cross-examination, L.J. testified that Bonilla had similarly "flashed" her on previous occasions, but she was unclear about the details, including when these occasions took place, and admitted she had never told anyone about them prior to her testimony.

After J.M. caught up with K.B. and told him Bonilla had kissed her, Bonilla approached the two children and invited them to go to the park with him to play basketball. K.B., who was 11 years old at the time of trial, testified that he responded to Bonilla's invitation by pointing out that they had a basketball hoop right there. However, Bonilla persisted in asking them to go to the park with him. Eventually, K.B. told Bonilla "let me go get a basketball" and went inside his house and alerted his grandfather.

K.B.'s grandfather came out of the house and told Bonilla to "get out of here." After being asked a number of times to leave, Bonilla finally rode away on his bicycle when K.B.'s grandfather threatened to call the police. A short time later, J.M.'s mother tracked Bonilla down in her car, asked him what happened, and took a picture of him on her cell phone. Bonilla smiled and kept repeating, "I don't want any problems."

### D.      Trial outcome

On March 4, 2013, a jury convicted Bonilla of two counts of committing a lewd act on a child under 14 (§ 288, subd. (a); counts 1 & 3) and one count of rape of a child under 14 (§§ 261, subd. (a)(2), 264, subd. (c)(1); count 2). The jury also found true the multiple victim enhancement allegation attached to each count (§ 667.61, subd. (e)(4)). The trial court sentenced Bonilla to an aggregate prison term of 40 years to life as follows: 15 years to life for count 1, plus 25 years to life for count 2, and 15 years to life for count 3 (stayed under section 654). This appeal followed.

## II.

## *DISCUSSION*

### A.      Sufficiency of the Evidence

Bonilla contends there is insufficient evidence to support his conviction for committing a lewd act on J.M. (§ 288, subd. (a); count 1). He argues the record lacks substantial evidence he had the requisite lewd intent when he kissed her cheek. We disagree.

4.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

Bonilla was convicted of violating section 288, subdivision (a), which states: "[A]ny person who willfully and lewdly commits any lewd or lascivious act … upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony …."

The purpose of the statute is to protect children from being sexually exploited. (*People v. Martinez* (1995) 11 Cal.4th 434, 443–444 (*Martinez*).) No matter how innocent its outside appearance, if the conduct in question is intended to arouse the lust, passion or sexual desire of the perpetrator or the child, "'it stands condemned by the statute.'" (*Id.* at p. 444.) "[M]odern courts state or imply that *any* touching of an underage child is 'lewd or lascivious' within the meaning of section 288 where it is committed for the purpose of sexual arousal." (*Id.* at p. 445.) All of the circumstances attendant to the conduct are relevant in making this determination. (*Ibid.*)

Bonilla argues the evidence in this case "merely" shows he "publicly kissed J.M. on the cheek in [a] manner consistent with non-sexual affection." However, it is not an everyday occurrence for an adult male to approach an unfamiliar young girl and, shortly

thereafter, make a comment of a sexual nature to her and then kiss her cheek and compliment her physical appearance. Based on these circumstances a rational trier of fact could certainly find Bonilla kissed J.M.'s cheek for the purpose of sexual arousal. His assertions to the contrary are unpersuasive and essentially ask us to reweigh the evidence on appeal. This is not the function of the appellate court. (*People v. Diaz* (1992) 3 Cal.4th 495, 541; *People v. Palma* (1995) 40 Cal.App.4th 1559, 1567.)

### B. Refusal to Instruct on Attempted Lewd Act as a Lesser Included Offense of Count 1

Next, Bonilla contends that the trial court erred by denying his request to instruct the jury on attempted lewd act (§§ 664, 288, subd. (a)) as a lesser included offense of the lewd act charged in count 1. There was no error.

"[O]n appeal we employ a de novo standard of review and independently determine whether an instruction on the lesser included offense ... should have been given." (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

Attempted lewd act on a child is recognized as a lesser included offense of the completed crime. (*People v. Herman* (2002) 97 Cal.App.4th 1369, 1386 [defendant properly convicted of attempted child molesting where he offered teenage girls money to engage in sex and suggested they come with him to the park, but they declined]; *People v. Imler* (1992) 9 Cal.App.4th 1178, 1181 (*Imler*) [defendant committed attempted child molesting when he pretended to be holding a 12-year-old's father hostage and, over the telephone, ordered the child to disrobe and touch his own penis, which the child did not do].)

The lewd act offense is committed whenever the defendant engages in any type of touching of a minor for sexual arousal, even if the touching is not inherently lewd and there is no actual arousal of sexual passion. (*Martinez, supra*, 11 Cal.4th at pp. 442, 444, 452.) An attempt to commit a crime requires "'a specific intent to commit it and a direct

6.

but ineffectual act … which is beyond mere preparation and yet short of actual commission of the crime.'" (*Imler*, *supra*, 9 Cal.App.4th at p. 1181.)

In support of his claim of instructional error, Bonilla posits the theory that the jury here could have found he committed an attempted lewd act, instead of the completed offense, even if it found that he possessed the requisite lewd intent at the time he kissed J.M. on the cheek. This is so, he asserts, because the jury could have reasonably found his act of kissing J.M. on the cheek was not intended for his *immediate* sexual gratification but instead was intended to groom J.M., or gain her trust, for his "*future gratification.*" In other words, the jury could have found the kiss constituted an ineffectual act towards the completion of whatever future lewd act Bonilla had in mind when he kissed J.M. on the cheek.

We do not find Bonilla's interpretation of the evidence particularly compelling. As exemplified by J.M.'s alarm after being kissed on the cheek by a total stranger, it is unlikely a rational trier of fact would have found Bonilla's unorthodox behavior constituted an effort to "earn the trust and confidence of the victim" as he asserts on appeal. However, even if the jury were to accept Bonilla's theory and find that his act of kissing J.M. was preparatory to a plan to touch her in a more provocative manner later for his sexual gratification, he still would have been guilty of a completed lewd act at that point because the touching would have been "sexually motivated by defendant's lascivious desire." (*People v. Lopez* (2010) 185 Cal.App.4th 1220, 1230.) Hence, his theory does not support his argument that the trial court should have instructed the jury on the lesser included offense of attempted lewd act.

The authority Bonilla cites to support his argument that an attempt instruction was required is inapposite. (See *People v. Webb* (1958) 158 Cal.App.2d 537, 542 [holding defendant could not be punished for both preparatory conduct (placing arm around child's shoulder while going to secluded area and then placing hands on child just prior to oral copulation) and subsequent oral copulation].) Contrary to Bonilla's suggestion,

7.

*Webb*, *supra*, does not support the conclusion that a completed violation of section 288 cannot be based on a touching that is part of, or incidental to, a plan to experience sexual gratification by touching the victim in a more blatantly sexual manner after a more innocuous appearing initial touching. Indeed, the California Supreme Court rejected a similar interpretation of the Court of Appeal's decision in *Martinez, supra*, 11 Cal.4th 434, explaining: "The [*Webb*] court never discussed cases allowing conviction for *all* sexually motivated 'touchings,' nor did it acknowledge that section 288 had been construed in this manner. At most, *Webb* stands for the proposition that the defendant could not be fairly *punished* for any touchings that were purely incidental to the oral copulation, whether or not such touchings otherwise violated section 288." (*Martinez*, at pp. 447–448, fn. 14, first italics added.) Because under Bonilla's own theory his sexually motivated kissing of J.M.'s cheek would have violated section 288, his argument fails to demonstrate the trial court was under a duty to instruct the jury on the lesser included offense of attempted lewd act.

### C.      Admission of Uncharged Sexual Offense Evidence

Bonilla contends the trial court erred in admitting, over defense objection, evidence of his commission of indecent exposure in May 2008. He claims the evidence was not relevant to the present case and its admission was unduly prejudicial. We disagree and conclude the trial court properly exercised its discretion in finding the indecent exposure evidence admissible under Evidence Code sections 1108 and 352.[4]

The trial court's ruling on the admissibility of uncharged sexual offense evidence is reviewed for abuse of discretion. (*People v. Carter* (2005) 36 Cal.4th 1114, 1149.) Thus, it "'must not be disturbed on appeal *except* on a showing that the court exercised its

---

[4]      In light of our conclusion, we need not resolve Bonilla's claim that the evidence was also inadmissible under Evidence Code section 1101.

discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Evidence Code section 1101 prohibits the admission of character evidence, including evidence of specific instances of conduct, to prove a defendant's conduct on another occasion. (Evid. Code, § 1101, subd. (a); *People v. Falsetta* (1999) 21 Cal.4th 903, 913 (*Falsetta*).) An exception to the rule exists when evidence of an uncharged offense is relevant to prove a fact, such as motive, intent, common plan, identity, or absence of mistake or accident, other than disposition to commit the charged conduct. (Evid. Code, § 1101, subd. (b).)

Evidence Code Section 1108, subdivision (a) provides an additional and broader exception to the general rule by allowing propensity evidence in sex offense cases. (*Falsetta*, *supra*, 21 Cal.4th at p. 907.) Evidence Code section 1108, subdivision (a) states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Evidence Code Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Bonilla contends the evidence of his commission of the uncharged offense of indecent exposure involving L.J. was not probative of his propensity to commit the charged sexual offenses against L.J. and J.M. and should have been excluded as unduly prejudicial under Evidence Code section 352. In support of his contention that the indecent exposure evidence was not relevant to this case, Bonilla relies heavily on *People v. Earle* (2009) 172 Cal.App.4th 372 (*Earle*). In *Earle*, the defendant was charged with two separate crimes—indecent exposure and assault to commit rape—involving two

different victims.  The defendant moved to sever the charges for trial, arguing that a joint trial would be prejudicial.  The trial court denied the motion, and the defendant appealed. (*Id.* at pp. 384–385.)

The Court of Appeal, in a two-to-one decision, reversed the assault conviction, concluding the trial court abused its discretion in denying the motion to sever because, absent expert testimony to the contrary, the commission of the indecent exposure did not rationally support an inference that the perpetrator had a propensity or predisposition to commit rape.  (*Earle*, *supra*, 172 Cal.App.4th at p. 398.)  The *Earle* court reasoned:  "[A] propensity to commit one kind of sex act cannot be supposed, without further evidentiary foundation, to demonstrate a propensity to commit a different act.  The psychological manuals are full of paraphilias, from clothing fetishes to self-mutilation, some of which are criminal, some of which are not.  No layperson can do more than guess at the extent, if any, to which a person predisposed to one kind of deviant sexual conduct may be predisposed to another kind of deviant sexual conduct, criminal or otherwise.  Is one who commits an act of necrophilia (Health & Saf. Code, § 7052) more likely than a randomly selected person to commit an act of rape?  Child molestation?  Indecent exposure?  Is a pedophile more likely than a rapist or a member of the public to commit necrophilia? Without some evidence on the subject, a jury cannot answer these questions."  (*Earle*, *supra*, at p. 399, italics omitted.)

To the extent Bonilla interprets *Earle* as categorically concluding that evidence of a defendant's propensity to commit indecent exposure, without expert testimony, is irrelevant to prove the defendant's propensity to a commit a different sexual offense, we disagree with this conclusion.  As we shall explain, such conclusion finds no support in the plain language of Evidence Code section 1108, its Legislative history, or case law interpreting the statute, and is contrary to the purpose of the statute's enactment.

As set forth above, Evidence Code section 1108 renders admissible in the trial of a sexual offense evidence of a defendant's commission of "*another sexual offense*"—i.e., a

10.

crime involving "*any of*" the enumerated crimes. (Italics added.)[5] The Legislature could have easily limited the evidence admissible under Evidence Code section 1108 to "another *similar* sexual offense or offenses" had it so intended. Because Evidence Code section 1108 does not contain any such limiting language, we must presume that the Legislature did not intend such a limitation. (E.g., *Soto v. State of California* (1997) 56 Cal.App.4th 196, 202 [rejecting plaintiff's contention that the immunity provided by Government Code section 8655 applied only in an emergency: "If the Legislature had intended to so limit the scope of the section, we presume it would have said so"].)

The legislative history of the statute supports our conclusion. The author of Evidence Code section 1108 reported: "'At the hearing before the Judiciary Committee, there was discussion whether more exacting requirements of similarity between the charged offense and the defendant's other offenses should be imposed. *The decision was against making such a change*, because doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [Assembly Bill No.] 882 is designed to overcome, ... and could often prevent the admission and consideration of

---

[5]     Evidence Code section 1108, subdivision (d) defines "'[s]exual offense'" as a crime that involved "[*a*]*ny conduct* proscribed by Section 243.4 [sexual battery], 261 [rape], 261.5 [unlawful sexual intercourse with a minor], 262 [rape of a spouse], 264.1 [rape in concert with another], 266c [unlawful sexual intercourse, sexual penetration, oral copulation, or sodomy], 269 [aggravated sexual assault of a child], 286 [sodomy], 288 [lewd acts on a child under 14 years], 288a [oral copulation], 288.2 [distributing matter depicting minors engaging in sexual activity], 288.5 [continuous sexual abuse of a child], or 289 [forcible sexual penetration], or subdivision (b), (c), or (d) of Section 311.2 [distributing obscene matter] or Section 311.3 [sexual exploitation of a child], 311.4 [employing a minor to distribute obscene matter], 311.10 [advertising obscene matter depicting a minor], 311.11 [possessing matter depicting minor engaging in sexual conduct], 314 [indecent exposure], or 647.6 [annoying or molesting a minor]," or "[a]ny conduct proscribed by Section 220 of the Penal Code [assault with intent to commit rape, sodomy, or oral copulation]," or "[c]ontact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person," or "[c]ontact, without consent, between the genitals or anus of the defendant and any part of another person's body," or "[d]eriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person," *or* "[a]n attempt or conspiracy to engage in conduct described in this paragraph." (Italics added.)

11.

evidence of other sexual offenses in circumstances where it is rationally probative. Many sex offenders are not "specialists," and commit a variety of offenses which differ in specific character.'" (Historical and Statutory Notes, 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1108, p. 352, italics added.)

In *Falsetta*, *supra*, 21 Cal.4th 903, a constitutional challenge to Evidence Code section 1108, the California Supreme Court concluded that admitting evidence of a defendant's other sexual offenses does not offend due process because, among other things, such offenses are highly relevant to a defendant's propensity to commit other sexual offenses. The court noted that in enacting Evidence Code section 1108, the Legislature had expanded the admissibility of disposition or propensity evidence in sex offense cases "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta,* at p. 911.) Such expansion was appropriate because of the relevance of the other offense evidence: "Although defendant disputes the point, the case law clearly shows that evidence that he committed other sex offenses is at least circumstantially relevant to the issue of his disposition or propensity to commit these offenses. As noted in [*People v.*] *Alcala* [(1984) 36 Cal.3d 604], 'Such evidence' is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much*.'"'" (*Falsetta*, *supra*, at p. 915, some italics omitted.)

In *People v. Loy* (2011) 52 Cal.4th 46 (*Loy*), the California Supreme Court expanded its holding in *Falsetta* to permit the introduction of evidence of prior sexual offenses under Evidence Code section 1108 even where the defendant contended that the prior and charged crimes were not similar and, therefore, the commission of the first was not probative of the defendant's propensity to commit the second. In *Loy*, the defendant was convicted of the 1996 murder (while engaged in a lewd and lascivious act) of his 12-year-old niece. At trial, the prosecution presented evidence that in 1975 and again in 1981, the defendant had been convicted of rape, oral copulation, and sodomy of two

women, ages 16 and 32. (*Loy,* at pp. 54–55.) The defendant contended the trial court erred in admitting this evidence because the prior crimes—raping two women to whom he was not related—were not similar to the charged crime, murdering his 12-year-old niece.

The *Loy* court disagreed, explaining that, even if the crimes were not similar, that fact "is not dispositive. Before [Evidence Code] section 1108 was enacted, Evidence Code section 1101 governed the admission of prior criminal conduct, and a body of law developed concerning how similar the prior conduct had to be to the charged crime; the required degree of similarity varied depending on the use for which the evidence was offered. [Citation.] 'All of that radically changed with respect to sex crime prosecutions with the advent of section 1108.... [S]ection 1108 now "permit[s] the jury in sex offense ... cases to consider evidence of prior offenses *for any relevant purpose*" [citation], subject only to the prejudicial effect versus probative value weighing process required by [Evidence Code] section 352.' [Citation.] 'In enacting Evidence Code section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101.' [Citation.] Or, as another court put it, '[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. *It is enough the charged and uncharged offenses are sex offenses as defined in section 1108*.'" (*Loy*, *supra*, 52 Cal.4th at p. 63, last sentence italics added.) Thus, although the defendant's previous sexual offenses may not have been sufficiently similar to be admissible under Evidence Code section 1101, they nonetheless were admissible under Evidence Code section 1108. (*Loy,* at p. 63; see *People v. Story* (2009) 45 Cal.4th 1282, 1293 [prior sexual offense evidence is "particularly probative" in sex cases].)

Furthermore, requiring expert testimony to establish the relevance of different sexual offenses to one another in every case would undermine Evidence Code section 1108's underlying policy of making evidence of other sexual offenses more easily admissible in subsequent sexual offense prosecutions. As our Supreme Court has explained, Evidence Code section 1108 "was intended in sex offense cases to *relax* the evidentiary restraints [Evidence Code] section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta*, *supra*, 21 Cal.4th at p. 911, italics added.) The "Legislature's principal justification for adopting [Evidence Code] section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (*Id.* at p. 915.)

Under the above authorities, Evidence Code section 1108 plainly applies in the present case. Bonilla's uncharged act of indecent exposure (§ 314) and the charged conduct of rape (§ 261) and commission of lewd acts (§ 288) are conduct within the express language of the statute (Evid. Code, § 1108, subd. (d)). Therefore, the evidence was presumptively probative. Moreover, the uncharged and charged crimes have important similarities. As Bonilla acknowledges, they occurred close in time and involved a common victim. Based on Bonilla's behavior of "flashing" his penis and masturbating in front of her, L.J. perceived he was deliberately harassing her. The uncharged offense was probative of Bonilla's propensity to subject young girls to unwanted criminal sexual activities. Bonilla's commission of the uncharged offense was relevant and probative to the present case and therefore the trial court did not err in finding the indecent exposure evidence admissible under Evidence Code section 1108.

14.

Nor did the trial court err in concluding that the probative value of the uncharged sexual offense was not outweighed by its prejudicial effect under Evidence Code section 352. We disagree with Bonilla's assertion that the prejudicial effect of the indecent exposure evidence was substantial and likely to lead the jury to convict him for being a "pervert" rather than basing its verdict on the strength of the evidence. Moreover, Bonilla's argument that the indecent exposure evidence should have been excluded as unduly prejudicial is largely based on his claim that it lacked probative value, which we have already rejected for reasons discussed above. The trial court did abuse its discretion in finding the evidence of Bonilla's uncharged sexual offense admissible under Evidence Code sections 1108 and 352.[6]

### D. Sentencing Error

Bonilla contends, the People concede, and we agree that the 25-year-to-life term the trial court imposed for his rape conviction (count 2) under the One Strike law (§ 667.61) violates the ex post facto clauses of the United States and California Constitutions because it imposed a greater punishment for his offense than was authorized by law when the offense was committed.

The One Strike law originally went into effect on November 30, 1994. (*People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1178.) The indeterminate life terms prescribed by section 667.61 "greatly exceed the determinate sentences previously available for violations of section 288 [and other sexual offenses.]" (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 257.) "Both the California and United States Constitutions proscribe ex post facto laws. (U.S. Const., art. I., § 10; Cal. Const., art. I, § 9.) The federal and state prohibitions against ex post facto laws apply to any statute that punishes as a crime an act previously committed which was not a crime when done or that inflicts greater

---

**6** Because we conclude that the trial court did not err in admitting the uncharged sexual offense evidence, we reject Bonilla's related claim that the error was prejudicial. The admission of the evidence did not violate his right to due process and a fair trial.

punishment than the applicable law when the crime was committed." (*Alvarez*, at p. 1178, fn. omitted.) "[I]t is the prosecution's responsibility to prove to the jury that the charged offenses occurred on or after the effective date of the statute providing for the defendant's punishment. When the evidence at trial does not establish that fact, the defendant is entitled to be sentenced under the formerly applicable statutes even if he raised no objections in the trial court." (*Hiscox*, at p. 256.)

In sentencing Bonilla to a 25-year-to-life term on count 2, the trial court apparently relied on section 667.61, subdivision (j)(2), which provides: "Any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), *upon a victim who is a child under 14 years of age*, shall be punished by imprisonment in the state prison for *25 years to life.*" (Italics added.) As the parties observe, this sentencing provision did not go into effect until September 9, 2010, as part of the "Chelsea King Child Predator Prevention Act of 2010" popularly known as "Chelsea's Law." (§ 667.61, as amended by Stats. 2010, ch. 219, § 1 et seq.)

Because the evidence at trial established that the qualifying offense for the multiple victim enhancement allegation in count 2 occurred prior to September 9, 2010, the effective date of section 667.61, subdivision (j)(2), it is appropriate to remand the matter for resentencing under the law in effect at the time of Bonilla's offenses.[7]

---

**7** We have considered and rejected the People's claim that it is unnecessary to remand the matter for resentencing and that this court should correct the sentencing error on its own. Because resentencing is required, the People may, on remand, address to the trial court their claim that the trial court should have used Bonilla's lewd act conviction in count 1 as a basis for imposing the 25-year-to-life multiple victim enhancement because, unlike in the case of count 2, the applicable provision of the One Strike law *was* in effect at the time of his commission of the offense in count 1.

## III.

### *DISPOSITION*

The judgment of conviction is affirmed but Bonilla's sentence is vacated and the matter is remanded for resentencing under the law in effect at the time Bonilla committed his offenses. The amended abstract of judgment shall be rendered to reflect application of the correct sentencing provisions and forwarded to the appropriate authorities.

_____
HILL, P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
FRANSON, J.

17.