Filed 2/10/26  P. v. Villegas CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOEL VILLEGAS,<br><br>    Defendant and Appellant. | B337179<br><br>(Los Angeles County<br>Super. Ct. No. KA129845) |

————————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,  Assistant Attorney General, Zee Rodriguez and Lauren Sanchez, Deputy Attorneys General, for Defendant and Respondent.

————————————

# INTRODUCTION

Joel Villegas appeals his convictions for contact with a minor with intent to commit a sexual offense and two counts of annoying or molesting a child. He contends there is no substantial evidence to support the jury's guilty verdict on these counts. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Information*

In 2023, Villegas was charged with contact with a minor with intent to commit a sexual offense (Pen. Code, § 288.3, subd. (a)[1]; count 3), two counts of annoying or molesting a child (§ 647.6, subd. (a)(1); counts 5 and 7), and destroying or concealing evidence (§ 135; count 6).[2] Villegas was tried by a jury.

B. *The Trial Evidence*

The People introduced evidence that Villegas sent sexual messages and videos to Naomi when she was 12 years old.

---

[1] Unspecified statutory references are to the Penal Code.

[2] There were no additional counts charged in the information, and these charges were later renumbered for purposes of trial as Counts 1 through 4. Although the counts are not listed chronologically, the parties use the original numbering in their appellate briefing, and we adopt their usage.

1. *People's Evidence on Count 7 for Annoying or Molesting a Child*

Naomi testified that in July 2020, when she was 12 years old, she participated in a group chat on Instagram with her friends. Naomi did not know every participant in the chat, so "we introduced one another to each other" and "we ended up telling each [other] how old we all were." Naomi told the group she was 12 years old. Another participant in the chat, Instagram user "lxl_eze_emf," told the group he was 18 years old. At the time, Naomi did not know who "lxl_eze_emf" was, but at trial she identified Villegas as the user of this account. Villegas was 32 years old in July 2020.

Villegas separately messaged Naomi's friend Danely and asked "if she could send him [Naomi's] phone number because he thought [Naomi] was pretty." Danely then created a three-way call on Instagram between herself, Naomi, and Villegas. Danely told Naomi that Villegas "found [her] pretty and that [she] should talk to him," but Naomi responded "that I didn't want a relationship at the time because I was 12." Danely encouraged Naomi to "text" Villegas because "[he was] cute," and Villegas joined in, "trying to get [her] to talk to him." Villegas asked Naomi "how old [she] was, and [she] told him [she] was 12." He told Naomi he was 16 years old, but she "corrected him, saying, didn't you tell me you were 18? And he said that age was just a number." Naomi responded that she was "12 years old and, to me, the age, the difference, did matter." Naomi repeated that she "didn't want to talk to him" and immediately hung up the three-way call.

Villegas and Danely then called Naomi "back and forth until [she] answered," and Villegas repeated "that age was just a

number." Naomi told Villegas that the age difference mattered to her and she "wasn't raised to do that." Villegas "asked [Naomi] if [she] wanted to be his girlfriend, [to] which [she] responded, 'No.'" Naomi hung up again.

Naomi testified that she did not see Villegas's face on the Instagram calls because everyone had their "cameras off," but she heard his voice on the call. After she met Villegas on Instagram, Naomi saw Villegas at her grandmother's apartment building and recognized him from "the tattoos he had on the side of his arm, because his Instagram picture was him sitting down with the tattoos showing." Naomi testified Villegas "would come and try to talk to [her]" when she saw him, but she would "always walk away from him." Naomi would also see him at Danely's family's parties, but she avoided him.

2.      *People's Evidence on Count 3 for Contacting a Minor With Intent To Commit a Sexual Offense*

Sometime in early February 2021, Danely called Naomi on Instagram, then added Villegas to the call. Danely and Villegas talked about the July 2020 group chat where Villegas "found girls [i]n the group chat pretty," and Danely told Villegas that Naomi was listening to the call. Villegas asked "[Naomi] if [she] wanted to talk to him," and he asked her "to be his girlfriend." Naomi said no.

Villegas then turned on his camera and exposed his penis. Naomi was able to screen-record the video feed using her iPad, and this video was introduced at trial. Naomi testified she was "scared" and "shocked" by this incident. Villegas then asked her, "[I]s it big?" Naomi didn't know whether to react, or what to say, and her "voice started cracking." Villegas asked her how old she

4

was, and Naomi told him she was 12 years old and said, "'[Y]ou're too old for me and I consistently told you that.'" Villegas asked, "'Oh, well, can I be your first?'" Naomi testified he "kept asking if we could have sex in a way, but I kept saying, no, that I was too young for that."

Later that evening, Villegas called Naomi "consistently" on Instagram. According to Naomi, Villegas "told Danely and [other friends] that I didn't want to respond to any of his calls and messages . . . they kind [of] told me that if I didn't answer him, that they were going to send him [to] where I live because that's what he was asking them." Naomi took Villegas's video call, and he asked her if she was busy. Naomi said she was "just laying down," and Villegas asked her, "What are you doing?" Naomi "hung up right away," but Villegas told her friends that she hung up, and when Villegas "kept calling," Naomi's friends "told [her] to answer him again." Villegas called "numerous times," and Naomi testified that "every time he would say a little comment to make me feel uncomfortable, [and] I would immediately hang up." Naomi blocked Villegas's account on Instagram after this incident.

### 3. *People's Evidence on Count 5 for Annoying or Molesting a Child*

"[T]wo" or "three" months later, a new Instagram user, "jay_the_big_beast," followed Naomi. Naomi was already friends with a boy named Jay on TikTok, and Jay and Naomi followed and regularly messaged each other on TikTok. "Jay_the_big_beast" had "the same images and the same videos as Jay's [TikTok] account," so Naomi believed her friend Jay had

5

made a "second account" and she responded to messages from "jay_the_big_beast."

After a few days of messaging "jay_the_big_beast," Naomi became "suspicious" because he would ask "what are you wearing . . . under your PJ's [pajamas]?" and "what color is your underwear?" Naomi responded, "Why would you say that?" and "jay_the_big_beast" called her with "his camera off so [she] was not able to see if it was Jay or not." The caller asked Naomi, "'Can you show me something?'" Naomi testified that the voice of "jay_the_big_beast" was "the exact same voice" as "lxl_eze_emf," and she believed it was Villegas. Naomi said, "'You're making me feel uncomfortable,'" and she ended the call, but Villegas called back, asking, "'If I show you something, will you show me something?'" Naomi said no, but Villegas turned on his camera, without showing his face, and exposed his genitals. Naomi testified that when Villegas exposed his penis to her, "it triggered me in a way," and she felt "very uncomfortable," "because it was not something people should do, especially when you're young."

The People introduced screenshots of Naomi's Instagram messages from "jay_the_big_beast" at trial. The messages read: "Are u alone" and "Can I see ur underwear." After Naomi declined one of his calls, Villegas messaged, "U wanna get raped[?] Then u better think about it[.] Run away then[.]"

Naomi believed "jay_the_big_beast" and "lxl_eze_emf" were both Villegas. Naomi reached out to Jay, who confirmed that he was not "jay_the_big_beast" on Instagram. Jay reported the fake account to the police in February 2022.

Officer Seok Lee with the Covina Police Department investigated Jay's report. After interviewing Naomi and reviewing the screen recording and screenshots of messages,

6

Officer Lee executed search warrants on Instagram and Apple. Officer Lee learned that the "jay_the_big_beast" account was created with the email "JVVillegas62666@icloud.com," and the iCloud account linked to this email contained "numerous" pictures of Villegas, pictures of Jay, and several documents with Villegas's name, phone number, and address.

Officers from the Covina Police Department executed a search warrant at Villegas's address.  While the other occupants of the house exited promptly when ordered by police, Villegas remained inside for "27 minutes," and when he emerged, his hands were bleeding.  Officers subsequently found a cell phone inside the toilet bowl, a destroyed cell phone in a trash can, and a third destroyed cell phone in Villegas's room.

4.     *Villegas's Trial Evidence*

Villegas testified in his own defense.  He stated he did not know Naomi or Danely and had never messaged Naomi on Instagram.  Villegas agreed that the "lxl_eze_emf" Instagram account was his, and acknowledged that he took a video exposing himself to the camera, but he testified that his account was hacked and someone else had sent the video to Naomi on Instagram.  Villegas did not believe that anyone had hacked his iCloud account, and he did not know why Jay's photos were stored in his account because he did not know Jay and had never downloaded any photos of him.  Villegas testified he destroyed his cell phones before the police search because phones "can get me in trouble, by the street code . . . if they find something there . . . me with my friends or whatever."  Villegas did not introduce any additional evidence.

C.    *Conviction and Sentence*

The jury convicted Villegas on all counts.  The court sentenced Villegas to a total prison term of three years, comprised of three years on Count 3, with concurrent terms of one year each for Counts 5 and 7, and six months on Count 6.  Villegas timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

When a defendant challenges the sufficiency of the evidence supporting his convictions, we """"must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."""" (*People v. Brooks* (2017) 3 Cal.5th 1, 57; accord, *People v. Clark* (2011) 52 Cal.4th 856, 942.)  We "must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

"'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts[.]'" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  Indeed, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction unless the testimony is physically impossible

or inherently improbable." (*People v. Romero* (2019) 44 Cal.App.5th 381, 386; accord, *People v. Panah* (2005) 35 Cal.4th 395, 489.) Additionally, "'[s]ubstantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom.'" (*People v. Myles* (2023) 89 Cal.App.5th 711, 739; accord, *People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) We will reverse only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

B.    *Substantial Evidence Supports the Jury's Verdict*

Villegas argues his convictions on Counts 3, 5, and 7 are not supported by substantial evidence.[3] Because the record contains substantial evidence, we affirm.

1.    *Identity of Perpetrator*

Villegas first argues that, as to Counts 3, 5, and 7, there was no substantial evidence "he was the person who contacted and communicated with Naomi." According to Villegas, the prosecution "introduced no evidence linking [him] to the 'lxl_eze_emf' Instagram account." Villegas also argues the People "failed to prove that [he] was the person using the 'jay_the_big_beast' Instagram account."

To the contrary, the jury heard substantial circumstantial evidence that Villegas used both accounts. Villegas admitted at trial that he used the "lxl_eze_emf" account, although he had

---

[3]    Villegas does not challenge his conviction on Count 6 for destroying or concealing evidence.

been hacked "two times." Villegas also admitted that he took the graphic video of his genitals that was shared by this account. Naomi testified that the "lxl_eze_emf" account "had pictures of [Villegas] and all his kids."

Instagram records introduced at trial further showed that "jay_the_big_beast" was created with the email address "JVVillegas62666@icloud.com," and the associated iCloud account contained many pictures of Villegas and documents showing Villegas's personal information, as well as some pictures of Jay. Villegas testified that the iCloud account was his, and he did not believe this account had ever been hacked.

From these circumstances, the jury could reasonably infer that Villegas used both Instagram accounts to contact Naomi. While these circumstances might also be interpreted to mean, consistent with Villegas's testimony, that his accounts were hacked and his private video released, the jury was entitled to and did interpret the evidence as demonstrating Villegas used both accounts in his interactions with Naomi. "'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence." . . . "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." . . . Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87 (*Manibusan*).)

Further, Naomi testified that she recognized Villegas from Instagram when she saw him later at her grandmother's apartment building due to his tattoos.  And Naomi testified that she continued to see Villegas at multiple parties hosted by Danely's family, and she "knew Mr. Villegas from the apartments because he lived in the area."  Naomi also testified that she recognized Villegas's voice from the Instagram calls she received from both "lxl_eze_emf" and "jay_the_big_beast."

Villegas challenges Naomi's testimony as flawed because it was "based on a mistaken identification and/or hearsay."  Villegas did not object to Naomi's identification on hearsay grounds at trial.  (See *People v. Perez* (2020) 9 Cal.5th 1, 7 ["Ordinarily, 'the failure to object to the admission of . . . hearsay at trial forfeits an appellate claim that such evidence was improperly admitted.'"].)  But in all events, the jury found Naomi's testimony credible, and "we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078; see *People v. Collins* (2021) 65 Cal.App.5th 333, 344 [reviewing court must view credibility findings "in the light most favorable to the jury's verdict"]; *People v. Reed* (2018) 4 Cal.5th 989, 1006 ["Even identification of defendant by a single eyewitness may be sufficient to establish, beyond a reasonable doubt, defendant's identity as perpetrator of the crime charged."].)  Naomi's identification, along with the evidence regarding the Instagram and iCloud accounts, was substantial evidence from which a reasonable jury could conclude beyond a reasonable doubt that Villegas contacted Naomi.

11

### 2. Contact With Minor With Intent To Commit Sexual Offense (Count 3)

Villegas argues that, even if he did contact Naomi in February 2021, there is no substantial evidence of his intent under section 288.3, i.e., "that he intended to commit a lewd act [under section 288] by touching Naomi or causing Naomi [to] touch him." We conclude substantial evidence supports the jury's conviction on this count.

Villegas was convicted on Count 3 of violating section 288.3 for his video calls to Naomi as "lxl_eze_emf" in February 2021. Section 288.3, subdivision (a), prohibits contact or communication with a minor, with knowledge that the person is a minor, "with the specific intent to commit an enumerated sex offense." (*People v. Keister* (2011) 198 Cal.App.4th 442, 449; accord, *People v. Villagran* (2016) 5 Cal.App.5th 880, 896 (*Villagran*).) The jury convicted Villegas on the theory that when he communicated with Naomi, he specifically intended to commit a lewd or lascivious act under section 288, subdivision (a). This required the prosecution to prove that "(1) [Villegas] contacted or communicated with a minor; (2) when [Villegas] did so, he intended to commit a lewd and or lascivious act involving that minor; and (3) [Villegas] knew or reasonably should have known that the person was a minor." (*People v. Clotfelter* (2021) 65 Cal.App.5th 30, 57 (*Clotfelter*).)

"A specific intent crime is one that requires the actor intend not only the proscribed act"—here, the contacting of a known minor—"but also that he intend some further act or additional consequence"—here, a lewd or lascivious act. (*People v. Cleaves* (1991) 229 Cal.App.3d 367, 380.) A lewd and lascivious act under section 288, subdivision (a), is "'any touching' of an underage

12

child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 452 (*Martinez*).) "The touching required by section 288(a) may be constructive. [Citations.] That is, 'a defendant need not touch the victim in order to violate section 288.' [Citation.] The required touching may be done by the child on his or her own person provided it was caused or instigated by a perpetrator having the requisite . . . intent," such as by changing clothes, taking photographs, or committing a lewd act upon him or herself. (*Villagran, supra*, 5 Cal.App.5th at pp. 890, 893-894; see *People v. Imler* (1992) 9 Cal.App.4th 1178, 1182.) "A defendant may violate section 288(a) even if he is not physically present when the touching occurs," including, for example, "through the medium of text messaging." (*Villagran*, at pp. 891-892; see, e.g., *People v. Hanna* (2013) 218 Cal.App.4th 455, 457-460.)

Accordingly, if substantial evidence supports a finding that Villegas contacted Naomi, knowing she was a minor, with the specific intent to commit a lewd and lascivious act, i.e., to touch or constructively touch her for the purpose of arousing his or her sexual desires, we affirm his conviction on Count 3. (See *Clotfelter, supra*, 65 Cal.App.5th at pp. 57, 59.) Specific intent to commit a lewd act under section 288 "can seldom be proven by direct evidence, [so] it may be inferred from the circumstances." (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 440; accord, *Villagran, supra*, 5 Cal.App.5th at p. 891; see *Manibusan, supra,* 58 Cal.4th at p. 87 ["'[E]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.'"].) Relevant circumstances include "'the charged act,'" as well as

13

"other acts of lewd conduct admitted or charged in the case," and "any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection." (*Martinez*, *supra*, 11 Cal.4th at p. 445.)

Here, Naomi's testimony, and the screen-recorded video shown at trial, showed that Villegas participated in a group Instagram video call with Naomi and Danely in February 2021. Naomi testified that Villegas "ask[ed] [her] if [she] wanted to talk to him," and he asked her "to be his girlfriend." After Naomi said no, Villegas turned on his camera, showed her his penis, and asked her, "Is it big?" As stated, a video of Villegas's exposed genitals was introduced at trial. Villegas asked about Naomi's age, and she stated she was 12 years old and that he was "'too old'" for her. Villegas then asked, "'[C]an I be your first?'" and Naomi testified he "kept asking if we could have sex," but she said no. Later that day, Villegas repeatedly called Naomi, who did not answer until Danely told Naomi that Villegas was asking where she lived and if Naomi didn't answer Villegas, Danely would send Villegas to Naomi's house. Villegas then asked Naomi what she was "doing" while "laying down" and made other "little comment[s] to make [her] feel uncomfortable."

This was substantial evidence from which the jury could find that Villegas contacted Naomi, a minor, with intent to commit a touching of Naomi for the purpose of sexual gratification. (See *People v. Korwin* (2019) 36 Cal.App.5th 682, 690-691 [substantial evidence of intent to commit a lewd and lascivious act with a minor, where defendant "repeatedly acknowledged" the minor's age and said "he wanted to take the girl's virginity" in online communications]; *People v. Singh* (2011) 198 Cal.App.4th 364, 369 (*Singh*) [same, where "despite knowing

14

[minor's] age, Singh engaged in a sexually explicit discussion with her, asked her detailed sexual questions, [and] told her that he could fulfill her sexual needs"].)

Villegas argues that this "interaction did not appear to be a serious attempt to communicate with or contact Naomi with the intent of arranging a meeting to commit any lewd acts with her," because Villegas and Danely "were laughing and making fun of Naomi who was shocked and silent when she saw the video of him exposing his penis." But the jury could reasonably conclude beyond a reasonable doubt, based on all relevant circumstances, that Villegas did intend to commit a lewd act on Naomi, whether in person or through electronic means. Naomi testified that Villegas repeatedly asked her for sex and that Villegas asked her friends for her address because she would not answer his calls. After exposing himself on the group call, Villegas persistently called Naomi one-on-one and tried to engage in suggestive conversation with her, such as asking her what she was "doing" while she was "laying down." Villegas called Naomi back each time she hung up. Evidence introduced on other charges further supports that Villegas intended to commit a lewd act with Naomi in February 2021. (See *Martinez*, *supra*, 11 Cal.4th at p. 445.) On other dates, Villegas asked to "see [Naomi's] underwear," asked her to "show him something," and threatened to "rape[]" her.

These circumstances support a reasonable inference that by contacting Naomi in February 2021, Villegas was not merely joking or "making fun" but that he intended to commit a lewd act on Naomi. (See *Singh*, *supra*, 198 Cal.App.4th at p. 369 ["Although the jury here was free to accept [defendant's] contention that he had not formed the requisite intent [for section

15

288], the jury was also free to reject that contention. . . . We may not substitute our conclusion for that of the trier of fact where, as here, the facts support more than one inference."].)

### 3. *Annoying or Molesting a Child (Count 7)*

Villegas contends that even assuming he was the person who contacted Naomi, there was no substantial evidence supporting his conviction on count 7 for annoying or molesting a child under section 647.6.[4] Specifically, he asserts that, as to the video calls in July 2020, "a normal person would not have been disturbed, irritated, or offended by his conduct, nor was his conduct motivated by an unnatural or abnormal sexual interest in Naomi."

Section 647.6 "requires proof of the following elements: (1) the existence of objectively and unhesitatingly irritating or annoying conduct; [fn. omitted] (2) motivated by an abnormal sexual interest in children in general or a specific child; (3) the conduct is directed at a child . . . and (4) a child or children are victims." (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1396; accord, *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1161 (*Valenti*), superseded by statute on other grounds as stated in *People v. Villegas* (2023) 97 Cal.App.5th 253, 281, fn. 9.) "[T]he annoying or molesting act need not, in and of itself, be lewd." (*People v. Thompson* (1988) 206 Cal.App.3d 459, 466; see *People v. Kongs* (1994) 30 Cal.App.4th 1741, 1750 ["section 647.6 has been applied to incidents of explicit sexual conduct" as well as

---

[4]     Villegas was convicted of the same offense on Count 5 for his communications as "jay_the_big_beast," but he does not contest the sufficiency of the evidence on Count 5 beyond the issue of his identity as addressed in Discussion Part B.1.

16

"more ambiguous" conduct].)  Further, "to determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an *objective* test not dependent on whether the child was in fact irritated or disturbed."  (*People v. Brandao* (2012) 203 Cal.App.4th 436, 441; accord, *People v. Lopez* (1998) 19 Cal.4th 282, 290-291 ["the actor's mental state is disregarded in evaluating whether the element of objectively disturbing conduct has been met"].)

Substantial evidence supports that Villegas's conduct in July 2020 was objectively irritating or disturbing.  Naomi testified that in July 2020, after she met Villegas in the group chat and shared that she was 12 years old, Villegas asked for her phone number and "tr[ied] to get [her] to talk to him."  Villegas (who was 32 at the time) lied about his age, first saying he was 18 years old.  When Villegas asked Naomi her age, and she confirmed she was 12 years old, Villegas then told her he was 16 years old and stated, "age is just a number."  Throughout this interaction, Naomi maintained she "didn't want a relationship at the time because [she] was 12," she "didn't want to talk to [Villegas]," and "the age . . . difference[] did matter" to her, and she hung up.  Despite this, Villegas and Danely called Naomi "back and forth until [she] answered," Villegas asked Naomi to be his girlfriend, and he repeated that "age was just a number."

The jury could reasonably conclude that Villegas's persistent calls to Naomi asking her to be in a relationship, despite her steadfast rejections, and his lies about his age were objectively irritating and disturbing.  (Compare *Valenti, supra,* 243 Cal.App.4th at p. 1163 [substantial evidence supported objectively irritating conduct where, within "five weeks" of meeting the children, defendant paid them "alarming" attention,

17

called them multiple times a day and "'wouldn't take no for an answer,'" and his "behavior was 'totally inappropriate' and felt 'like stalking'"] with *Clotfelter*, *supra*, 65 Cal.App.5th at pp. 52-53 [emails and gifts to a child were insufficient evidence of irritating conduct where defendant "was considered part of the family" and child considered him "a 'father figure' and 'older brother,'" "there was no language in the e-mails that was objectively irritating or annoying," and defendant's "expressions of love and affection were seemingly reciprocated"].)

Villegas argues that "[i]t was Danely who repeatedly called Naomi, included [him] in the calls, and repeatedly tried to convince Naomi to talk to him[,]" while he "added comments here and there, he was messing around and seemingly parroting what Danely was saying in a joking manner." But the jury could reasonably infer from this evidence that Villegas participated in irritating and disturbing conduct. Villegas further asserts that "there is no evidence that he pestered [Naomi] further after [she] answered 'no'" to being his girlfriend and "there is no evidence that [he] attempted to contact Naomi on his own outside of Danely's influence" in July 2020. However, Naomi testified that she declined to talk to Villegas from the start, and that while Danely initiated the repeated three-way calls, Villegas affirmatively answered Danely's calls, which included Naomi as a participant.

Finally, substantial evidence supports a finding that Villegas's conduct was motivated by an abnormal sexual interest in Naomi. As stated, Naomi testified that Villegas called her "pretty" and wanted her phone number, he asked her to be his girlfriend, and knowing she was 12 years old, he told her "age is just a number." Indeed, from Naomi's testimony about the

18

July 2020 calls, it appears that Villegas did not discuss any other topics with her aside from a potential romantic or sexual relationship.  (Cf. *People v. Fromuth* (2016) 2 Cal.App.5th 91, 104 [substantial evidence of abnormal sexual interest in children where defendant's "actions in continuing to pursue [minor] after he learned that she was 15 years old that reflected his sexual interest in children"]; see *People v. Shaw* (2009) 177 Cal.App.4th 92, 103 ["there can be no *normal* sexual interest in any child"].)

## DISPOSITION

The judgment is affirmed.


                                        MARTINEZ, P. J.
We concur:


FEUER, J.                          GIZA, J.[*]

---

[*]      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19